IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

DANIEL SMALL,

     Plaintiff,

     -against-

CHRIS KENNEDY, in his capacity as the
Operating Manager of DMRJ Group LLC, and
MARTIN TROTT, in his capacity as the
Operating Manager of DMRJ Group LLC,

     Defendants.

18 Civ. 5000 (PKC/OTW)

---

**Plaintiff's Memorandum of Law in Support of Motion
for a Preliminary Injunction**

TAYLOR & COHEN LLP
Robert Cohen
Zachary S. Taylor
40 Worth Street
10th Floor
New York, New York 10013
Telephone: (212) 257-1900
Facsimile: (646) 808-0966

New York, New York
June 15, 2018

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... i

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 2

    I.    PPVA, DMRJ, the Implant Investment, and Small's Rights
Under the Operating Agreement. ............................................................. 2

    II.    DMRJ Earns Tens of Millions of Dollars in Profits from
the Implant Investment. ........................................................................ 4

    III.    PPVA's Cayman Island Bankruptcy and the Misrepresentation
of DMRJ's Ownership. .......................................................................... 4

    IV.    Defendants' Breaches of the Operating Agreement ................................. 6

    V.    Defendants Are Wrongfully Dissipating DMRJ's Assets Without
Any Regard to the Obligations Owing to Small. ...................................... 8

ARGUMENT ..................................................................................................... 9

    I.    Small is Entitled to a Preliminary Injunction. ........................................ 9

        A.    Irreparable Harm: Small Faces Imminent Injury. ......................... 9

        B.    Small is Likely to Succeed on the Merits. ..................................... 10

CONCLUSION.................................................................................................. 15

# TABLE OF AUTHORITIES

**<u>Cases</u>**

*Barkauskie v. Indian River School District,*
 951 F. Supp. 519 (D. Del. 1996) ................................................................. 12

*Citigroup Global Markets., Inc. v. VCG Special Opportunities Master Fund Limited,*
 598 F.3d 30 (2nd Cir. 2010) ...................................................................... 13

*City of New York v. Golden Feather Smoke Shop, Inc.,*
 597 F.3d 115 (2nd Cir. 2010) ...................................................................... 9

*Gibson v. U.S. I.N.S.,*
 541 F. Supp. 131 (S.D.N.Y. 1982) .............................................................. 11

*Grand River Enterprise. Six Nations, Ltd. v. Pryor,*
 481 F.3d 60 (2nd Cir. 2007) ...................................................................... 10

*In re Bernard L. Madoff Investment Securities LLC,*
 458 B.R. 87 (Bankr. S.D.N.Y. 2011) .......................................................... 12

*Marino v. Grupo Mundial Tenedora, S.A.,*
 810 F. Supp. 2d 601 (S.D.N.Y. 2011) ........................................................ 11

*Mullins v. City of New York,*
 554 F. Supp. 2d 483 (S.D.N.Y. 2008) ........................................................ 10

*Mullins v. City of New York,*
 634 F. Supp. 2d 373 (S.D.N.Y. 2009) ........................................................ 10

*Reuters Limited. v. United Press International, Inc.,*
 903 F.2d 904 (2nd Cir. 1990) ...................................................................... 9

**<u>Statutes</u>**

Del. Code 6 § 18-305(a) .............................................................................. 11

## INTRODUCTION

Plaintiff Daniel Small brings this motion to prevent Defendants Christopher Kennedy and Martin Trott from dissipating the assets of DMRJ Group LLC ("DMRJ") to the point where DMRJ would be unable to satisfy a judgment for Small in this action. Defendants control DMRJ and presently serve as the company's Operating Manager. Pursuant to the Amended and Restated Operating Agreement of DMRJ Group LLC (the "Operating Agreement"), Small is a minority member of DMRJ and is entitled to 6.5% of the company's yearly net profits. The motion for preliminary relief, therefore, seeks an order requiring Defendants to preserve $6 million of DMRJ's cash to satisfy this obligation to Small.

Defendants were appointed by the Grand Court of the Cayman Islands as the Joint Liquidators of Platinum Partners Value Arbitrage Fund L.P. ("PPVA") when that entity filed a voluntary petition for liquidation in the Cayman Islands. PPVA is the majority member of DMRJ and, before the liquidation proceedings, was DMRJ's Operating Manager. DMRJ is not a party to the Cayman Islands liquidation proceeding. Indeed, DMRJ is a solvent entity, owned only in part by PPVA, incorporated in Delaware, with tens of millions of dollars in net assets.

Since the Cayman Islands court appointed Joint Liquidators for PPVA in the latter part of 2016, Defendants have repeatedly stated in court filings that they are DMRJ's Operating Manager and that they control the company. Consequently, they owe multiple obligations to Small — as fiduciaries and under Operating Agreement. Defendants have violated these obligations and have clearly stated that they intend

to continue to violate these obligations by, most importantly, wrongly using assets of DMRJ to pay themselves and to satisfy supposed obligations of PPVA without any regard to the obligations owing to Small under the Operating Agreement.

Defendants have also refused to allow Small access to DMRJ's books and records, despite Small's clear right to such material pursuant to both the Operating Agreement and Delaware law. Their motivation is clear: Defendants are attempting to deprive Small of the opportunity to shed light on their scheme to loot DMRJ's assets to the detriment of Small.

Through this action, Small seeks the Court's intervention to prevent Defendants from continuing to improperly use DMRJ's assets. Absent injunctive relief, Small is powerless to stop Defendants from dissipating the assets of DMRJ and, effectively, preventing Small from receiving the money to which he is contractually entitled.

## BACKGROUND

I.  **PPVA, DMRJ, the Implant Investment, and Small's Rights Under the Operating Agreement.**

PPVA is a Cayman Islands' exempted limited partnership that operated as a multi-strategy investment fund. PPVA made investments directly and, in certain circumstances, through special purpose subsidiaries. (Compl., ¶ 20).

In August 2008, PPVA formed DMRJ — a special purpose subsidiary — to make and hold the portfolio investment in Implant Sciences Corporation ("Implant"), a Massachusetts company engaged in the explosive trace detection market. (Compl., ¶ 21; Declaration of Robert Cohen ("Cohen Decl."), Ex. A at ¶ 9).

2

From 2008 through 2015, DMRJ made tens of millions of dollars in investments in Implant and provided a revolving credit facility of tens of millions of dollars. (Compl., ¶¶27, 28; Cohen Decl., Ex. at A ¶¶ 22-23; Ex. B at ¶ 20).

On January 1, 2011, DMRJ's operating agreement was amended to, among other things, include Small as a minority interest member. Under this new Operating Agreement, Small is entitled to 6.5% of the company's yearly "Net Profits." (Compl. ¶ 25; Cohen Decl., Ex. D). "Net Profits" are defined as the "net profits … of the Company [DMRJ] as determined for Federal Income tax purposes, with the adjustments required pursuant to Treasury Regulation Section 1.704-1(b)(2)(iv)." (Cohen Decl., Ex. D at §§ 1.1(J), 8.1). Small (who is defined as the First Profit Interest Member in Section 6.1) has a clear right to 6.5% of these Net Profits:

> Section 8.2   Subject to Section 8.4 hereof, the Net Profits of the Company shall be allocated to the Members as follows:
>
> A.    90% to Platinum Partners Value Arbitrage Fund L.P.; 6.5% to the First Profits Interest Member ….

(*Id.* at § 8.2. *See also id.* at §§ 6.5, 7.1, and 7.2).

Additionally, Section 11.1(C) of the Operating Agreement provides Small with an unambiguous right to access DMRJ's books and records:

> Any Member shall the right from time to time at his expense to have his accountants and representatives examine and/or audit the books and records of the Company and the information referred to in this Section, and the Operating Managers will make such books and

3

records and information available for such examinations
and/or audits.

(*Id.* at § 11.1(C)).

## II.   DMRJ Earns Tens of Millions of Dollars in Profits from the Implant Investment.

DMRJ was able to convert its notes in Implant into common stock and to sell the stock at a significant profit. (Compl., ¶ 27). Consequently, in 2012, 2013 and 2014, DMRJ's profits resulting from its sale of Implant stock totaled more than $38 million. (Compl., § 27; Cohen Decl., Ex. B at ¶ 48 and Ex. EE). This figure does not include the interest DMRJ earned during this period from the revolving credit facility.

In May 2015, DMRJ assigned part of its interest in Implant's securities to Montsant Partners LLC ("Montsant"), a wholly-owned subsidiary of PPVA. (Compl., ¶ 28; Cohen Decl., Ex. A at ¶ 27). In June 2017, DMRJ and Montsant received approximately $55 million for their remaining interest in Implant. (Compl., ¶ 28; Cohen Decl., Ex. C at ¶ 6.14). Of this amount, DMRJ received $46 million. (Compl., ¶ 28; Cohen Decl., Ex. C at Appendix VI).

## III.   PPVA's Cayman Island Bankruptcy and the Misrepresentation of DMRJ's Ownership.

On August 23, 2016, PPVA filed a petition for voluntary liquidation in the Grand Court of the Cayman Islands. (Compl., ¶ 29; Cohen Decl., Ex. E). Beginning in October 2016, the Grand Court of the Cayman Islands placed PPVA under the control of Joint Liquidators. (Compl., ¶ 29; Cohen Decl., Ex. F). Presently,

Defendants Christopher Kennedy and Martin Trott are PPVA's Joint Liquidators. (Compl., ¶ 29).

On October 18, 2016, PPVA filed a Chapter 15 Petition for Recognition of Foreign Proceeding in the United States Bankruptcy Court for the Southern District of New York. (Compl., ¶ 30). In connection with the Petition, Defendant Kennedy filed a sworn declaration in which he wrongly represented to the court that DMRJ was a "wholly-owned subsidiary" of PPVA. (*Id.*; Cohen Decl., ¶ 9, Ex. G at ¶¶ 20, 70(i)).

On November 23, 2016, the United States Bankruptcy Court for the Southern District of New York entered an order directing, *inter alia,* that PPVA's liquidation proceedings in the Cayman Islands be recognized as a foreign main proceeding under Chapter 15 of the Bankruptcy Code. (Compl., ¶ 31; Cohen Decl., Ex. H). DMRJ is not part of any bankruptcy proceeding, either in the Cayman Islands or in the United States. (Compl., ¶ 29).

Defendant Kennedy's representations to the U.S. Bankruptcy Court concerning DMRJ's ownership were false. The Operating Agreement that included Small as a Member of DMRJ had been in existence for nearly six years. Small's membership, therefore, was not a new development by any means.

This was not the only time that Defendants have concealed Small's ownership in DMRJ from a court. On March 8, 2017, Defendants issued their Third Report of the Official Liquidators [of PPVA] to the Grand Court of the Cayman Islands (the "Third Report"). On page three of the Third Report, Defendants state

that DMRJ is a "wholly owned subsidiary of the Master Fund." The "Master Fund," in the Third Report, refers to PPVA. (Compl., ¶ 34; Cohen Decl., Ex. C. at p. 3).

Of course, Kennedy was well aware of Small's membership in DMRJ. Notably, on December 19, 2017, Kennedy signed another declaration — this time in New York State Supreme Court. In that sworn statement, filed in the case *of DMRJ Group LLC v. B Asset Manger, L.P., et al*., No. 655181/2017, Kennedy presented to the court quite a different picture of DMRJ's ownership, stating that "PPVA holds all *or substantially all* of the membership interests in DMRJ." (Compl., ¶ 32; Cohen Decl., Ex. I at ¶ 9 (emphasis added)). Moreover, Kennedy even attached the Operating Agreement to his declaration. He then referenced the agreement's provisions regarding minority members, like Small, to support DMRJ's arguments against B Asset Manager's motion to dismiss DMRJ's complaint. (Compl., ¶ 33; Cohen Decl., Ex. I at ¶¶ 13, 15 and p. 5, n. 2).

## IV.    Defendants' Breaches of the Operating Agreement.

Since the Cayman Islands court appointed Joint Liquidators for PPVA in the latter part of 2016, Defendants have repeatedly represented that they are DMRJ's Operating Manager and that they control the company. These representations have come from Defendant Kennedy's own sworn statements, as well as sworn declarations from counsel representing the Joint Liquidators. (Compl., ¶ 5; Cohen Decl., Ex. B at ¶ 5; Ex. I at ¶¶ 1, 10, 13; Ex. A at ¶ 18).

In their capacity as DMRJ's Operating Manager, Defendants have an obligation to ensure that Small receives distributions on a yearly basis in the

amount of 6.5% of DMRJ's Net Profits. (Cohen Decl., Ex. D at §§ 6.5, 7.1, 7.2, 8.1 and 8.2). Defendants have refused to honor these obligations, denying Small his appropriate distributions for each fiscal year beginning in 2012.

As noted above, from 2012 through 2014 (inclusive), DMRJ earned a total of more than $38 million in Net Profits from the sale of Implant stock. (Compl., ¶ 27; Cohen Decl., Ex. B at ¶ 48 and Ex. EE). Undoubtedly, DMRJ received millions more in interest on the revolving credit facility. Small is entitled to 6.5% of these funds — an amount that equals at least $2.5 million, exclusive of the profits earned on the credit facility. However, Small has received only $218,662.15 of these profits. (Compl., ¶¶ 37; Cohen Decl., ¶ 12, Ex. J).

Additionally, as explained above, Defendants have indicated that, since 2015, DMRJ and Montsant received at least $55 million from the sale of Implant stock. (Compl., ¶ 28 Cohen Decl., Ex. A at ¶ 27, Ex. C at ¶ 6.14). Nevertheless, Small has not received any distributions relating to the profits derived from these realizations. (Compl., ¶ 39).

Moreover, Defendants have refused to allow Small access to DMRJ's books and records. In a letter dated August 9, 2017, Small's counsel in the Cayman Islands made a clear demand to Kennedy for this material:

> In order to assist Mr. Small in determining the full amount of his profits entitlement pursuant to the DMRJ Operating Agreement, we also request, on behalf of Mr. Small, that this firm be given access to the books and records of DMRJ for examination purposes pursuant to Section 11.1(C) of the DMRJ Operating Agreement.

(Cohen Decl., Ex. K). Kennedy refused this demand, and Defendants continue to deny Small access to DMRJ's books and records. (Compl., ¶ 42).

**V.      Defendants Are Wrongfully Dissipating DMRJ's Assets Without Any Regard to the Obligations Owing to Small.**

According to their Third Report, as of December 31, 2017 PPVA, had a cash balance of $44,951,809.50. More than 97% of this money — $43,820,775 — is attributed to DMRJ. (Compl., ¶ 44; Cohen Decl., Ex. C at Appendix VI). Rather than complying with their obligations under the Operating Agreement and making a distribution to Small, Defendants are using, and have stated their continued intent to use, DMRJ as the piggybank for their work as PPVA's Liquidators.

For example, in the Third Report, Defendants informed the Grand Court of the Cayman Islands that they intend to pay a secured creditor of PPVA $8.5 million. (Compl., ¶ 45; Cohen Decl., Ex. C at ¶ 5.6, n. 6). In the same report, they indicated there are additional similarly-situated secured creditor claims of PPVA in the amount of approximately $45.39 million being evaluated for payment. (Compl., ¶ 45; Cohen Decl., Ex. C at ¶ 5.5). On March 21, 2018, during an Official Meeting of PPVA's creditors, Defendants said they intend to resolve these claims "***as quickly as possible***." (Compl., ¶ 45; Cohen Decl., Ex. L at p. 3 (emphasis added)). Notably, nowhere in this report, or any other issued by Defendants, is there any mention of Small's right to receive 6.5% of DMRJ's yearly Net Profits. Defendants have effectively erased any trace of Small's rights under the Operating Agreement.

While completely ignoring Small's right to 6.5% of DMRJ's yearly Net Profits, Defendants are also using DMRJ's assets to fund their legal and administrative

expenses. As of December 31, 2017, according to the Third Report, these expenses totaled $11,877,990. In the report*, Defendants indicated that **less than one percent** of these expenses — $70,453 — is attributable to DMRJ. (Compl., ¶ 47; Cohen Decl., Ex. D. at Appendix VI). Because more than 97% of the PPVA's cash balance belongs (by Defendants' own admission) to DMRJ, Defendants are funding their own operations as Joint Liquidators with DMRJ's funds. Notably, in the report they filed with the Cayman Islands Courts, which was released on March 8, 2018, Defendants stated that they "are currently preparing their first fee application," which is "expected to be filed with the Grand Cayman shortly." (Cohen Decl., Ex. C at ¶ 8.1).

## ARGUMENT

### I.     Small is Entitled to a Preliminary Injunction.

A party seeking injunctive relief "must establish (1) irreparable harm and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party." *City of New York v. Golden Feather Smoke Shop, Inc.*, 597 F.3d 115, 120 (2nd Cir. 2010) (internal quotations omitted). Small has readily satisfied the requirements.

### A.     Irreparable Harm: Small Faces Imminent Injury.

Small has established a showing of probable irreparable harm, which is "the single most important prerequisite for the issuance of a preliminary injunction." *Reuters Ltd. v. United Press Int'l., Inc.*, 903 F.2d 904, 907 (2nd Cir. 1990). Indeed,

the irreparable harm Small faces — empty coffers at the company which owes him millions of dollars — is "imminent" and anything but "remote or speculative." *Id.*

Here, Defendants have made representations to the Cayman Island Court that they intend to use DMRJ's assets (Compl., ¶¶ 45, 46; Cohen Decl., Ex. C. at ¶¶ 5.5, 5.6) to satisfy PPVA obligations. They have also indicated, in no uncertain terms, that this is not some vague plan. Rather, they have informed PPVA's creditors that they will start to use DMRJ funds "***as quickly as possible***." (Compl., ¶ 45; Cohen Decl., Ex. L at p. 3 (emphasis added)). Additionally, Defendants have not acknowledged, in any reports or filings with the Cayman Island courts, Small's contractual right to 6.5% of DMRJ's yearly Net Profits. To the contrary, they have misrepresented DMRJ's ownership, in an attempt to hide the obligations owing to Small under the Operating Agreement. Plainly, the injury Small faces is very real and quite imminent. It is also harm that "cannot" — as made clear by the statements of Defendants — "be remedied if a court waits until the end of trial to resolve the harm." *Mullins v. City of New York*, 634 F. Supp. 2d 373, 386 (S.D.N.Y. 2009) (quoting *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2nd Cir. 2007). In other words, the injury Small is facing is precisely the type for which injunctive relief was designed to prevent.

**B.**    **Small is Likely to Succeed on the Merits.**

Small has readily met the requirement that he is likely to succeed on the merits of his claims. Indeed, Small has presented more than the requisite "prima facie case" to justify the issuance of preliminary relief. *Mullins v. City of New York*,

554 F. Supp. 2d 483, 487 (S.D.N.Y. 2008) ("In determining whether a plaintiff has shown a likelihood of success on the merits of his ultimate case, a court is not called upon finally to decide the merits of the controversy. It is necessary only that the court find that the plaintiff has presented a strong prima facie case to justify the discretionary issuance of preliminary relief.") (quoting *Gibson v. U.S. I.N.S.*, 541 F. Supp. 131, 137 (S.D.N.Y. 1982).

Defendants have, either directly or through their counsel, represented that they are the Operating Manager for DMRJ and that they control the company. (Compl., ¶ 5; Cohen Decl., Ex. B at ¶ 5; Ex. I at ¶¶ 1, 10, 13; Ex. A at ¶ 18). Consequently, they have contractual obligations to Small contained in the Operating Agreement as well as fiduciary duties owing to the fact the Small is a minority member of DMRJ. *See, e.g. Marino v. Grupo Mundial Tenedora, S.A.*, 810 F. Supp. 2d 601, 608 (S.D.N.Y. 2011) ("[A]n LLC's managers and controlling members in a manager-managed LLC owe the traditional fiduciary duties that directors and controlling shareholders in a corporation would.") (internal quotations omitted).

It is clear that Defendants have breached provisions of the Operating Agreement with respect to Small's entitlement to 6.5% of DMRJ's yearly Net Profits. There is no ambiguity in the contract. Similarly, there is no doubt that Defendants have refused to make, or cause DMRJ to make, the required distributions. Furthermore, it is beyond argument that Defendants have refused Small's demands for access to the books and records, in violation of both the

11

Operating Agreement and Delaware law. *See, e.g.*, Del. Code 6 § 18-305(a). Thus, Small is likely to succeed on his contract claims.

Small is also likely to succeed on his claim for an accounting, which is pled in the alternative. Defendants have certainly breached their fiduciary duties to Small. They have expressed their intention to use DMRJ funds to satisfy obligations they have to another entity — PPVA. They are incurring fees for their work that will necessarily be paid using DMRJ funds. They have deprived Small of access to basic information about the company, even though such information is crucial to determining Small's distributions under a valid contract. In short, Small has readily demonstrated that he is entitled to an accounting. *See, e.g.*, *In re Bernard L. Madoff Inv. Secs. LLC*, 458 B.R. 87, 130 (Bankr. S.D.N.Y. 2011) (claim for accounting stated where complaint alleges that that officers and senior managers of investment company had fiduciary relationship with company and that they breached those duties to company and diverted its assets for their own benefit); *Barkauskie v. Indian River School Dist.*, 951 F. Supp. 519, 543 (D. Del. 1996) ("An accounting is an equitable remedy which arises from the defendant's possession of money which he is obliged to surrender, due to some particular relationship between himself and the plaintiff.")

Because Small has established a likelihood of success on the merits of his claims against Defendants, the court need not consider the "serious questions" standard. In any event, Small also satisfies this alternative requirement for a preliminary injunction.

The "serious questions" standard "permits a district court to grant a preliminary injunction in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction." *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2nd Cir. 2010). Here, at the very least, Small's complaint presents solid claims that are fair ground for litigation. The allegations and claims are based on documentary evidence, including filings and reports submitted by Defendants themselves. They demonstrate that Defendants have breached both their contractual and fiduciary obligations to Small.

It is also clear that the balance of the hardships tips decidedly in favor Small. The harm that will be caused to Small in the absence of injunctive relief will be far greater than any conceivable prejudice incurred by Defendants. There is a very real danger that Small will be unable to recover monies to which he is contractually entitled. There is simply no comparable harm for Defendants.

The injunction is quite limited in scope and merely requires Defendants to maintain $6 million of DMRJ's cash to satisfy any judgment in favor of Small. There is no reasonable argument, then, that the injunction could harm DMRJ, which has no operations or employees and is not a going concern. Defendants, likewise, would not suffer any harm from the injunction. Certainly, they would not incur any financial hardship or threat to their business operations.

Finally, any argument by Defendants that their actions are justified —
because of the fact that Small is included in a federal indictment, unsealed in
December 2016, in the Eastern District of New York and is named in a Securities
and Exchange Commission civil complaint — is meritless. First, the Operating
Agreement does not contain any provision that permits the Operating Manager to
ignore the agreement's obligations to Small.

Second, DMRJ itself has represented to a federal court that the indictment
and the SEC complaint have nothing whatsoever to do with the company.
Specifically, on January 18, 2017, DMRJ, which Defendants have affirmed they
control, filed a sworn statement, through its counsel, in the United States
Bankruptcy Court for the District of Delaware, stating that the "allegations in the
Indictment and SEC Action … are not based on and do not relate to" DMRJ. (Cohen
Decl., Ex. B at ¶ 13).

14

## <u>CONCLUSION</u>

For the reasons set forth herein, Plaintiff Daniel Small's motion for

preliminary injunctive relief should be granted.


Dated: New York, New York
        June 15, 2018

                              TAYLOR & COHEN LLP

                              By: <u>/s/ Robert Cohen</u>
                                   Robert Cohen
                                   Zachary S. Taylor
                                   40 Worth Street, 10th floor
                                   New York, NY 10013
                                   Tel. (212) 257-1900
                                   Fax (646) 808-0966
                                   rcohen@taylorcohenllp.com
                                   ztaylor@taylorcohenllp.com

                                   *Attorneys for Plaintiff Daniel Small*

15