# EXHIBIT C



**In the Grand Court of the Cayman Islands**

**Financial Services Division**

**Cause No: FSD 131 of 2016 (NSJ)**

Platinum Partners Value Arbitrage Fund L.P. – In Official Liquidation

Report of the Official Liquidators to the Grand Court of the Cayman Islands

The Companies Law (2016 Revision, as amended)

**STRICTLY PRIVATE & CONFIDENTIAL**

**THIRD REPORT OF THE OFFICIAL LIQUIDATORS TO THE GRAND COURT OF THE CAYMAN ISLANDS**

**Platinum Partners Value Arbitrage Fund L.P. - in Official Liquidation ("PPVA" or the "Master Fund")**

**Dated: 31 December 2017**

**Issued: 8 March 2018**



**REPORT INDEX**

1. Introduction ...................................................................................................................... 7

2. Background ...................................................................................................................... 8

3. Progress of the Liquidation ............................................................................................. 9

4. Statutory Obligations ..................................................................................................... 17

5. Creditors ......................................................................................................................... 20

6. Assets .............................................................................................................................. 23

7. Investigations ................................................................................................................. 30

8. Next Communication .................................................................................................... 32

9. Accounting and Costs of the Official Liquidation ....................................................... 32

10. Other Matters ................................................................................................................. 34



**SCHEDULE OF DEFINED TERMS**

| Term | Definition |
| --- | --- |
| $ | The United States Dollar |
| 20 September Hearing | Hearing in Chambers dated 20 September 2017 |
| Azarga | Azarga Uranium |
| BAM | B Asset Manager LP and BAM Administrative Services, LLC |
| Bloomgold | Bloomgold Resources |
| Blumont | Blumont Group Ltd |
| Cardinal Health | Carindal Health 414, LLC |
| Celsius | Celsius Resources |
| CFD | Contract for Difference |
| China Horizon | China Horizon Investments Group |
| CIMA | Cayman Islands Monetary Authority |
| Cokal | Cokal Ltd. |
| Collected Data | The data retrieved by LDM from Platinum file servers |
| Committee | The liquidation committee of the Master Fund |
| CWR | Companies Winding Up Rules, as amended |
| DMRJ | DMRJ Group LLC, a wholly owned subsidiary of the Master Fund |
| DoJ | The United States Department of Justice |
| First Report | The JOLs' 21 November 2016 report to the Grand Court regarding their plan for the liquidation |
| Funds | Together the Master Fund, Offshore Feeder Fund, Onshore Feeder Fund and Intermediate Fund. |
| GLC | GLC Advisors & Co, independent portfolio managers |
| GLC Report | GLC Valuation report dated 31 March 2017 |
| Grand Court | The Grand Court of the Cayman Islands |
| Hardey | Hardey Resources Limited |
| Heartland | Heartland Bank |
| IBD | Intermediary Bank Discovery |
| IMA | Information management agreement |
| IMSC | Implant Sciences Corp. |
| Intermediate Fund | Platinum Partners Value Arbitrage Intermediate Fund Ltd. – In Official Liquidation, a Cayman Islands company |
| Intermediate JOLs | Ms Margot MacInnis and Mr Cosimo Borrelli of Borrelli Walsh (Cayman) Limited and Borrelli Walsh Limited respectively, in their capacity as Grand Court appointed joint official liquidators of the Intermediate Fund |
| JOLs | Martin Trott and Christopher Kennedy as joint official liquidators of the Master Fund |



**SCHEDULE OF APPENDICES**

| | |
|---|---|
| Appendix I | Schedule of JOLs' Information Requests and Subpoenas |
| Appendix II | JOLs' letter of 17 October 2017 to Unsecured Creditors |
| Appendix III | Minutes of 9 November 2017 Master Fund Creditor Meeting |
| Appendix IV | Notice of 21 March 2018 Annual Creditor Meeting |
| Appendix V | Schedule of Asset Realisations |
| Appendix VI | JOLs' Consolidated Receipts & Payments Account as at 31 December 2017 |



claim) are being reported based on the proofs of debt received, and not on any expectation as to likely validity and/or quantum.

**Purported Secured Creditor Claims**

5.3   The JOLs' Second Report notes that $187,821,787.70 of claims had been received which purported to be secured by, or which were purportedly pursuant to documents which appeared to create a security interest over, the assets of the Master Fund.

5.4   Upon preliminary review of the PSC claims (and the underlying documentation relating to the same), the JOLs determined that, for reasons not limited to a) security not being expressly claimed in the proof of debt or b) a lack of appropriate language in the underlying documentation to grant a valid security interest, claims totalling $22,338,161.24 should not be considered to be PSC claims. These claims are being treated as unsecured.

5.5   Since the date of the Second Report, the JOLs have received further proofs of debt relating to additional purported secured claims, resulting in a net increase of $1,291,460.39 in the total value of PSC claims. As such, as at the date of the 20 September hearing, the JOLs considered there to be a total of $166,775,086.85 unadjudicated PSC claims. These have since been broken down into the following categories, each of which are discussed below:

|    |                                                              | Total Value of Claims Filed, per proofs of debt* (US$) |
| -- | ------------------------------------------------------------ | ---: |
| 1. | Accepted Secured Claim                                       | 7,093,673.61 |
| 2. | PSC Claims with Security Rejected and Rejection Under Appeal | 9,211,860.93 |
|    | **Claims Under Review**                                      |  |
| 3. | PSC over all assets of the Master Fund                       | 45,396,278.04 |
| 4. | PSC over specific assets                                     | 79,146,350.64 |
|    | **Total Claims to be Considered as PSC**                     | **$ 140,848,163.22** |
| 5. | PSC Claims with Security Rejected                            | 25,926,923.63 |
|    | **TOTAL**                                                    | **$ 166,775,086.85** |

*Note that such values may be subject to increase as a result of accruing interest and other charges.*

21 | R H S W



**Accepted Secured Claim**

5.6     The JOLs have issued one notice of admission to Heartland Bank ("**Heartland**"), accepting their secured claim in full. The JOLs are sufficiently satisfied that Heartland has a first priority security interest over US-based assets such that it is in the Master Fund's interests to pay Heartland's claim. The JOLs anticipate that payment will shortly be made to Heartland out of the realisations from the assets subject to its security[6].

**PSC Claims with Security Rejected and Rejection Under Appeal**

5.7     As discussed at section 3 the JOLs have been granted the power to make a summary determination in relation to the validity of the security purported by the PSC claims.

5.8     The JOLs have issued determination notices to 66 PSCs with claims totalling $35,138,784.56 (see rows 2 and 5 in table above) rejecting their status as a secured creditor on the basis that security was not expressly claimed in the proof of debt (in accordance with CWR Order 17, rule 1, which states that "*any secured creditor omitting to disclose security in his proof of debt shall surrender his security for the benefit of creditors, unless the Grand Court relieves him from the effect of such rule, on the grounds that the omission was inadvertent or the result of an honest mistake*").

5.9     In accordance with the terms of the Order, any PSC whose security is rejected has the right to appeal to the Grand Court, within 21 days (or prior to any other such deadline agreed), for an order that the JOLs' decision be reversed or varied. Since issuing their determinations, the JOLs have received notices of appeal from 39 creditors with claims totalling $9,211,860.93 (see row 2 in table above).

5.10    The appeals have not yet been heard by the Grand Court, however, the JOLs are currently considering their next steps with regard to such appeals. It should be noted that the JOLs have not yet made any adjudications as to the validity of the underlying claims themselves.

**PSC Claims with Security Rejected**

5.11    Of the 66 determinations issued by the JOLs, 27 claims with a total value of $25,926,923.63 (see row 5 in the table above) are now being treated as unsecured, given that the deadline for appeal of the

---

[6] The total payment, including accrued interest and costs, is anticipated to be approximately $8.5m



6.12   Secondly, as the Grand Court will be aware, many of the Master Fund's books and records were held on file servers. Physical control of these servers was taken by the former Receiver, who subsequently restricted the JOLs' direct access to those servers. Although the JOLs have been working with the current Receiver to gain proper access to the information on the servers, and expect shortly to do so, at the date of this Report this process was not yet complete.

6.13   Finally, where the JOLs have been able to obtain copies of relevant asset documentation, in several instances the JOLs have found that they are restricted in their ability to dispose of the assets. This is particularly the case with certain of the Master Fund's equity investments, where the Master Fund is the owner of restricted shares. Examples of restrictions placed on the sale of these shares include limiting the potential buyers of any shares to existing investors only, or forcing shares to be 'drip-fed' to the market in small batches over a period of time. The effect of such restrictions is to make the assets significantly less marketable and thereby more difficult for the JOLs to realise.

6.14   As a result of such factors, the JOLs have had limited success in realising the Master Fund's assets, with total realisations[7] to date being $59,187,065.35. Of this amount, $55 million is attributable to the settlement that DMRJ Group LLC ("**DMRJ**") and Montsant Partners LLC ("**Montsant**"), wholly owned subsidiaries of the Master Fund, agreed with Implant Sciences Corp ("**IMSC**") in April 2017 and which was sanctioned by the Grand Court on 25 May 2017, and which with the Grand Court will therefore be familiar.

6.15   Included at Appendix V is a schedule that lists all the Master Fund's assets that were valued at more than $5 million in the June 2016 Position Schedule, together with the recoveries that the JOLs have made in respect of those assets.

6.16   Although the JOLs' efforts in respect of the realisation of specific assets is described in further detail below, one overarching observation is that many of the Master Fund's assets appear to have been significantly overvalued in the June 2016 Position Schedule. For example, the Master Fund's investments in Northstar GOM Holdings ("**Northstar**") and Over Everything, LLC ("**Over Everything**") were valued at approximately $197 million and $22 million respectively in the June 2016 Position Schedule, however, Northstar entered into Chapter 11 bankruptcy in December 2016 whilst Over Everything had ceased operating by early 2017 and no recoveries are expected to be made. Similarly,

---

[7] Including at subsidiary level



opportunity to review their books and records and without having first attempted to settle any disputes outside of court.

7.13   The JOLs are also working closely with the liquidators of the Offshore Feeder Fund and the Onshore Feeder Fund to investigate a number of potential joint actions.  Whilst these investigations are underway, they are in their preliminary stages and it would therefore be inappropriate for the JOLs to comment further at this stage.

**8.   Next Communication**

8.1   The JOLs are currently preparing their first fee application for both the provisional liquidation period and the official liquidation period from 27 October 2016 (date of appointment of official liquidators) through 31 December 2017.  This is expected to be filed with the Grand Court shortly.

8.2   The JOLs will provide the Grand Court with updates in relation to any material developments as necessary and will report in accordance with the CWR.

**9.   Accounting and Costs of the Official Liquidation**

9.1   Included at Appendix VI is a copy of the JOLs' accounts which show the consolidated receipts and payments of the Master Fund and its subsidiaries, together with the liquidation expenses incurred but not paid.  As at 31 December 2017 the Master Fund had a cash balance of $44,951,809.50[8].

9.2   The time costs incurred by the JOLs for the period from 1 June 2017 to 31 December 2017 total $1,290,862.50 (prior seven month period: $1,867,288.50).  This represents 2650 hours at an average rate of $487.12 per hour (prior seven month period: 3,566.30 hours at an average rate of $523.59 per hour).

9.3   The JOLs' disbursements for the same period total $25,571.17 (prior seven month period: $43,591.11).  These costs relate to courier charges, notary costs, travel costs and photocopying and communication charges.

---

[8] As indicated elsewhere in the Report, these funds are not available for distribution and/or payment of Master Fund liquidation expenses until such time as the claims of agreed secured creditors have been paid in full.

## 10. Other Matters

10.1 Should you have any queries concerning the contents of the Report please contact the JOLs Christopher Kennedy at CKennedy@RHSWCaribbean.com, Martin Trott at MTrott@RHSWCaribbean.com, or their colleague Hannah Gethin at HGethin@RHSWCaribbean.com.

*[signature]*

Martin Trott
Joint Official Liquidator
Platinum Partners Value Arbitrage Fund L.P. – In Official Liquidation



**Appendix VI**  **JOLs' Consolidated Receipts & Payments Account as at 31 December 2017 (The** *remainder of page has intentionally been left blank)*

**PLATINUM PARTNERS VALUE ARBITRAGE FUND L.P.**
**(IN OFFICIAL LIQUIDATION)**

**CONSOLIDATED RECEIPTS & PAYMENTS ACCOUNT**

**27 OCTOBER 2016 (DATE OF APPOINTMENT) TO 31 DECEMBER 2017**

| Accounts of the Joint Official Liquidators | USD |
|---|---|
| **Opening Cash Balance** | |
| Opening Cash Balance | $ 101,496.01 |
| | $ 101,496.01 |
| **Receipts** | |
| Asset Recovery - Adelphia (In Chapter 11 Bankruptcy) | $ 2,549.00 |
| Asset Recovery - Blumont Share Sale | $ 1,872,129.35 |
| Asset Recovery - China Cablecom | $ 670,243.22 |
| Asset Recovery - Class Action Claims | $ 322.49 |
| Asset Recovery - CNC Developments | $ 38,300.00 |
| Asset Recovery - DMRJ | $ 46,006,422.11 |
| Asset Recovery - Grey K Environmental Fund | $ 341,092.86 |
| Asset Recovery - Pro Player | $ 698,600.01 |
| Asset Recovery - Excalibur Ventures | $ 98,713.50 |
| Asset Recovery - Airdye | $ 1,265,300.34 |
| Interest | $ 3,588.51 |
| Retainer Refund | $ 21,115.15 |
| | $ 51,018,376.54 |
| **Payments** | |
| Legal Fees and Costs  (re Provisional Liquidation period) | $ (2,050,000.00) |
| DMRJ - Legal Fees | $ (1,802,484.27) |
| Asset Managers' Fees and Costs | $ (1,050,000.00) |
| Liquidators' Fees and Costs | $ (418,508.50) |
| DMRJ - Manager Fees | $ (239,235.00) |
| DMRJ - Asset Manager Fees & Costs | $ (144,427.61) |
| Liquidators' Fees and Costs (re Provisional Liquidation period) | $ (130,295.00) |
| Asset Cost - Pro Player Security Payment | $ (102,020.50) |
| Advance for Legal Fee Disbursements | $ (85,824.95) |
| Wintercrest Legal Fees & Costs | $ (53,826.00) |
| Legal Fees and Costs | $ (43,835.25) |
| Subsidiary RO Administrative Charges | $ (31,182.00) |
| Books & Records Recovery Costs | $ (14,036.11) |
| Bank Account Charges | $ (1,283.52) |
| Liquidation Filing Fees | $ (1,043.36) |
| Government Filing Fees | $ (60.98) |
| | $ (6,168,063.05) |
| **Closing Cash Balance** | $ 44,951,809.50 |
| **Accrued Expenses**[1] | |
| *Provisional Liquidation Expenses* | |
| Liquidators' Fees and Costs | $ (615,093.00) |
| Liquidators' Legal Counsel Fees and Costs | $ (555,438.00) |
| Platinum Key Professionals Costs | $ (318,296.32) |
| | $ (1,488,827.32) |
| *Official Liquidation Expenses* | |
| Liquidators' Fees and Costs | $ (3,639,964.20) |
| Liquidators' Legal Counsel Fees and Costs | $ (3,755,280.12) |
| Platinum Key Professionals Costs | $ (235,101.40) |
| Portfolio  Management Fees | $ (2,085,903.44) |
| IT Consultant Fees | $ - |
| Liquidation Committee Legal Counsel Fees and Costs | $ (174,797.95) |
| Collateral Agent Fees and Costs | $ (241,232.19) |
| Other Legal Fees | $ (25,177.96) |
| | $ (10,157,457.26) |
| *DMRJ Expenses* | |
| Managers' Fees | $ (62,690.00) |
| Legal Fees | $ (7,763.53) [2] |
| Asset Manager Fees | $ - |
| | $ (70,453.53) |
| *Wintercrest Expenses* | |
| Legal Counsel Fees and Costs | $ (11,307.72) |
| *Platinum Montaur Life Sciences Expenses* | |
| Legal Counsel Fees and Costs | $ (55,545.15) |
| *Meserole Expenses* | |
| Legal Counsel Fees and Costs | $ (94,399.32) |
| **TOTAL ACCRUALS** | $ (11,877,990.30) |
| **Net Closing Position** | $ 33,073,819.20 |

[1] Accrued expenses are reflected as at 31 December 2017 per the records currently available to the liquidators.  The liquidators' fees are subject to consideration by the liquidation committee and approval by the Grand Court of the Cayman Islands.  All other expenses are subject to review and approval by the liquidators and are therefore subject to change.

[2] Note that $1,096,879.64 of US Counsel's legal fees were paid via the Implant bankruptcy; this accrued total is reflective of such payment.