# EXHIBIT L


RHSW CARIBBEAN

**Platinum Partners Value Arbitrage Fund L.P. – In Official Liquidation (the "Master Fund")**

**MINUTES OF THE OFFICIAL MEETING OF THE MASTER FUND'S CREDITORS**

Date and time: 21 March 2018 at 2:00pm Cayman time/ 3:00pm EST
Venue: Via telephone conference call

**In attendance:**
- Mr. Martin Trott ("**MT**"), Joint Official Liquidator
- Mr. Christopher Kennedy ("**CK**"), Joint Official Liquidator
- Ms. Hannah Gethin ("**HG**") of RHSW (Cayman) Limited ("**RHSW**")
- Mr. Matthew Dors of Collas Crill
- Various creditors of the Master Fund (by phone)

**Chairperson**

MT acted as Chairperson and HG as secretary.

It was noted that notice of the meeting had been provided in accordance with the Companies Winding Up Rules 2018 ("**CWR**") Order 8, Rule 4.

It was further noted that the meeting was quorate and could proceed.

**Introduction**

MT introduced himself, along with CK as the Joint Official Liquidators ("**JOLs**") of the Master Fund, along with Matthew Dors, of Collas Crill, acting as Cayman counsel to the JOLs. As a matter of housekeeping the Chairperson stated that the telephone line would remain muted, until he invited questions.

**Purpose of the Meeting**

The Chairperson welcomed participants to the Annual General Meeting of the Master Fund's creditors, and explained the primary purpose of which being to provide a report on the progress of the liquidation and to give creditors an opportunity to ask the JOLs any questions they may have.

RHSW CARIBBEAN

### Liquidation Update

### Assets

The Chairperson commented that there had been a focus shift in the liquidation, away from asset realisation towards litigation and assessing the possible causes of action the JOLs may pursue. Whilst the JOLs have continued to progress asset realisations as much as possible, the Chairperson highlighted that the realisation of assets to date has been for significantly less than the book value reported by the Master Fund prior to liquidation. Furthermore, the Chairperson explained that given the distressed and illiquid nature of the assets, the majority required funding to realise or maintain value, which considering the limited cash resources of the Master Fund, the JOLs do not consider to be a viable course of action. As such, their focus has turned to progressing their investigations with a view to recovering value through litigation claims, ultimately for the benefit of the liquidation estate and its creditors.

### Books and Records

The Chairperson explained that since the start of the Liquidation, considerable efforts have been made to recover the books and records of the Master Fund; the primary source of which being the data held on the Platinum managed servers.

As previously reported, the Chairperson explained that challenges had been faced in this process, by virtue of the fact that the Master Fund's data had been co-mingled with other Platinum managed funds. An extensive amount of work was required to segregate this data, and reach agreements with the Receiver of Platinum Partners Credit Opportunities Master Fund L.P. ("**PPCO**") with regards to excluding potentially privileged information. The Chairperson confirmed that this process has now been completed, and the JOLs have the access and ability to search and interrogate the Master Fund's data, which is being hosted by their e-Discovery provider KPMG. The Chairperson highlighted, that this ability will form a vital role in progressing the JOLs' investigations.

In addition to obtaining the data held by Platinum, the Chairperson explained that the JOLs had also sought to retrieve books and records from third party service providers, who had provided services to the Master Fund prior to the appointment of the JOLs. The Chairperson commented that whilst this process was well under way and a number of underlying asset level companies and service providers had cooperated with the JOLs' requests, a significant number had failed to respond. As such, the Chairperson explained that, where the JOLs have considered the turnover of records to be key to their investigation, the have followed up their requests with the issuance of subpoenas, and will continue to consider other instances where this may be required.

### Cash Position

The Chairperson explained that, whilst the Master Fund has access to approximately US$40 million in cash, some if not all of this cash is encumbered. This is mostly as a result of a number of purportedly secured claims over all assets of the Master Fund. The Chairperson explained that in the months and years leading up to the

RHSW CARIBBEAN

Liquidation, Platinum management had purportedly issued security over all assets of the Master Fund to a number of third party creditors. Currently, the balance of these secured claims exceeds the amounts recovered from assets.

The Chairperson explained that the assets which form part of this security would effectively sit outside of the liquidation, and as such, to the extent that the security is valid, the JOLs are not able to use or distribute the cash that is in the Master Fund estate. Therefore, it is in the interests of the unsecured creditors that the JOLs deal with and manage the security issues, in order to discharge the security as quickly as possible, to allow funds to be realised for the benefit of the unsecured creditors.

The Chairperson commented that the JOLs have been focusing on liaising with the purported secured creditors to further understand their claims, request further evidence of the same and to discuss issues such as priority and validity of the claims.

**Funding**

The Chairperson explained that the JOLs have been exploring various avenues for funding arrangements, and that they are currently in discussions with six different funding providers. Whilst all at various stages of negotiations, the primary purpose of all these discussions is to obtain liquidation funding for the estate, as well as a focus on litigation funding. The Chairperson commented that this will allow the JOLs to progress their investigations, with a hope to bringing claims and making realisations on behalf of creditors. The Chairperson explained that it is the JOLs' current expectation that the majority of their claims will be settled by way of settlement agreements and that full scale litigation will not be commenced. However, this may be subject to change.

In addition to funding discussions, the Chairperson commented that the JOLs have also been in talks with their own attorneys and other providers in relation to bringing certain claims on a contingency basis. The Chairperson explained that in some instances this may be necessary as the nature of some claims may mean that working on a time and cost basis will not necessarily be feasible.

**Liquidation Committee**

The Chairperson explained that the JOLs had initially determined the Master Fund to be of doubtful solvency, however it became clear to the JOLs that this determination should be amended to insolvent. The effect of this being that the former contributory members of the Committee (Platinum Partners Value Arbitrage Fund (International) Limited – in Official Liquidation and Platinum Partners Value Arbitrage Fund (USA) LP) were automatically terminated as the economic interest now lies with the creditors of the Master Fund.

In addition to this change in constitution, the Chairperson further explained that Committee Member Kismetia Ltd had resigned from the Committee, as they purport to have a secured creditor claim and the Committee should consist of members with unsecured claims. As such, the Chairperson explained that the JOLs had invited nominations for up to two additional Committee members and had received responses from Platinum Partners Value Arbitrage Fund (International) Limited – In Official Liquidation (in its capacity as a

RHSW CARIBBEAN

redemption creditor), and Washington National Insurance Company. Given the two membership positions available, these two creditors were elected to the Committee without the need for a vote.

Furthermore, the Chairperson explained, that following the passing of a resolution, proposed by the JOLs and approved by the Committee, Mr Leon Meyers had been removed from the Committee.

As such, the Chairperson confirmed that the Liquidation Committee now constituted the following members;

1. New Mountain Finance Corporation, by its representative Harris Kealey (hkealey@newmountaincapital.com);

2. Black Elk Litigating Trust, by its representative Richard Schmidt, in his capacity as trustee of the Black Elk Litigating Trust (rss@judgerss.com);

3. Platinum Partners Value Arbitrage Fund (International) Limited – In Official Liquidation, by its representative Samantha Wood (smw@borrelliwalsh.com) (formerly, Margot MacInnis (mgm@borrelliwalsh.com)); and

4. Washington National Insurance Company, by its representative Nick Hoffman (nick.hoffman@harneys.com).

The Chairperson reminded the creditors that the purpose of the Committee is to act as a sounding board for the JOLs and to assist them in understanding the views of the creditors when making decisions throughout the liquidation. The JOLs will also seek approval from the Committee before seeking sanction from the Grand Court of the Cayman Islands for significant transactions, such as asset sales, commencement of litigation proceedings or entering into settlement agreements. The Chairperson explained that, as well as assisting the JOLs, the Committee should also be a body that the general body of creditors are able to consult with should they have any concerns with regards to the liquidation. The Chairperson explained that representatives for each Committee member could be contacted per the details listed above.

**Next Communication**

The Chairperson confirmed that a further annual report will be circulated in early 2019. However, if there were any material developments in the interim, in particular with regards to funding or material realisations, the creditors will be updated accordingly.

**Questions**

The Chairperson unmuted the lines and invited questions.

*A query was raised with regards to the likelihood and range of possible recoveries for the unsecured creditors?*

RHSW CARIBBEAN

The Chairperson responded that it is the JOLs' expectation that there will be sufficient recoveries for there to be distributions to the unsecured creditors. He explained that, although asset realisations are likely to be used for the purported secured creditor claims, recoveries from litigation claims should result in distributions to the unsecured creditors. However, given the nature and inherent uncertainty of litigation claims, the Chairperson commented that it was not possible to provide an accurate estimate of the level of these expected returns.

*A query was raised with regards to the expected timeline for the conclusion of the liquidation and the expected costs.*

The Chairperson responded that it was difficult to accurately estimate a timeline for the completion of the liquidation, however it is highly likely that the liquidation will continue for several years. The nature of the claims currently being considered by the JOLs could involve lengthy legal actions, which would require the liquidation to be ongoing.

The Chairperson estimated that the current monthly run rate of the liquidation is approximately US$250,000 per month, including JOLs' and their legal counsels' fees. However, he highlighted that this figure is very dependent on a number of factors, including but not limited to the extent of investigations required, and the fee basis for bringing claims and as such may increase or decrease as the liquidation progresses.

*Any query was raised as to the Master Fund's remaining asset values.*

CK explained that the remaining asset position was not very strong and that the JOLs only consider there to be residual value in a small handful of assets. It is possible that Yellow River Cayman Limited and China Horizon Investments Group may recover in the high single digit millions and the same may be possible from two remaining pharmaceutical companies (which the Chairperson elected to not name on the open line given they are publically traded companies). In addition, it is hoped that a few other assets positions might recover in the low single digit million range.

The Chairperson reiterated that it is the JOLs' expectation that asset recoveries will largely be used to settle the purported secured creditor claims, and that recoveries for the unsecured creditors will be litigation based. He further commented that the JOLs are confident that the Master Fund does have strong causes of action which should result in returns to the unsecured creditors.

*A query was raised with regards to cooperation and coordination with other Platinum fiduciaries; namely the liquidators for the Feeder Funds and the PPCO Receiver.*

The Chairperson confirmed that the JOLs are in active dialogue with both sets of fiduciaries. They have a good working relationship with the PPCO Receiver and are working with the Feeder Fund liquidators to identify claims which can be brought on a joint basis.

RHSW CARIBBEAN

*As query was raised as to whether the secured lenders would be entitled to litigation recoveries?*

The Chairperson confirmed that only recoveries from certain claims would fall under the all asset security purportedly granted, whilst recoveries from other claims, such as those of a tort nature, would fall outside of the scope of this security and be capable of distribution to the unsecured creditors.

**Any Other Business**

No further business was raised and the meeting was bought to a close at 2.40pm (Cayman Time)/3.40pm EST.

_____
**Martin Trott**
**Chairperson**

