IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL SMALL,<br><br>       *Plaintiff,*<br><br>   -against-<br><br>CHRISTOPHER KENNEDY, in his capacity as the Operating Manager of DMRJ Group LLC; and MARTIN TROTT, in his capacity as the Operating Manager of DMRJ Group LLC,<br><br>       *Defendants.* | 18 Civ. 5000 (PKC)(OTW)<br><br>**FIRST AMENDED COMPLAINT** |

Plaintiff Daniel Small, through his undersigned attorneys, Taylor & Cohen LLP, for his First Amended Complaint against Defendants Chris Kennedy and Martin Trott in their capacities as the Operating Manager of DMRJ Group LLC ("DMRJ"), alleges as follows:

## NATURE OF ACTION

1.  This action arises out of Defendants' breach of their obligations under the Amended and Restated Operating Agreement of DMRJ Group LLC (the "Operating Agreement") to Plaintiff Daniel Small, who is a member of DMRJ.

2.  As set forth in Operating Agreement, a copy of which is attached as Exhibit A, Small is entitled to 6.5% of DMRJ's yearly net profits. Although DMRJ has earned tens of millions of dollars in profits over the last six years, he has been paid a small fraction of what he is owed. Defendants, who are DMRJ's Operating Manager, are withholding this money from Small in violation of his rights under the Operating Agreement.

3.    Small does not know the precise amount of money that he is owed under the Operating Agreement because Defendants have also refused to grant him access to DMRJ's books and records, despite Small's clear right to this material under both the Operating Agreement and Delaware law. At a minimum, though, Small is entitled to several million dollars under the Operating Agreement.

4.    Defendants were appointed by the Grand Court of the Cayman Islands as the Joint Liquidators of Platinum Partners Value Arbitrage Fund L.P, ("PPVA") when that entity filed a voluntary petition for liquidation in the Cayman Islands. PPVA is the majority member of DMRJ and, before the liquidation proceedings, was DMRJ's Operating Manager. DMRJ is not a party to the Cayman Islands liquidation proceeding. Indeed, DMRJ is a solvent entity, owned only in part by PPVA, incorporated in Delaware, with tens of millions of dollars in net assets.

5.    Since the Cayman Islands court appointed Joint Liquidators for PPVA in the latter part of 2016, Defendants have repeatedly stated in court filings that they are DMRJ's Operating Manager and that they control the company.

6.    As DMRJ's purported Operating Manager, Defendants have several irrefutable obligations under the Operating Agreement — all of which they have willfully breached in order to improperly raid the assets of DMRJ under the cover of the Cayman Islands bankruptcy proceeding.

7.    *First*, the Operating Manager is required to make distributions to Small in accordance with his right to receive 6.5% of DMRJ's Net Profits. (Ex. A at

¶¶ 7.2, 8.2). Defendants have refused to make any distributions to Small for the amount to which he is entitled.

8.    **Second**, the Operating Manager has the obligation to provide any Member, such as Small, with access to DMRJ's books and records. (*Id.* at ¶ 11.1(C)). Defendants have rejected Small's written demand for access to DMRJ's books and records.

9.    **Third**, the Operating Agreement is clear that the filing of PPVA's voluntary petition for liquidation in the Cayman Islands automatically triggers the termination of DMRJ, upon which the Operating Manager is required to liquidate the company and distribute the proceeds to the Members, including Small. (*Id.* at ¶¶ 10.2, 10.4, 10.5). Defendants have failed to initiate the termination and liquidation of DMRJ.

10.    Instead of fulfilling their obligations as DMRJ's Operating Manager, Defendants are using DMRJ's funds to pay their own bills as PPVA's Joint Liquidators and to fund PPVA's legal expenses. As of December 31, 2017, according to filings made by Defendants in PPVA's Cayman Islands liquidation, their legal and administrative expenses total $11,877,990. **Less than one percent** of these expenses — $70,455 — is attributable to DMRJ, according to Defendants' own calculations. Nevertheless, nearly all of the expenses incurred in connection with PPVA's liquidation will necessarily be funded out of DMRJ's assets because, according to Defendants' filings, **more than ninety-seven percent** of the cash that they have claimed for PPVA belongs to DMRJ.

11.     Thus, in blatant disregard of Small's rights as a minority member of DMRJ, Defendants are using money that rightfully belongs to him for their own purposes. Indeed, in a report they filed with the Grand Court of the Cayman Islands in March 2018, Defendants stated their intention to file soon a fee application seeking reimbursement for, among other things, their expenses.

12.     Defendants have also refused to allow Small access to DMRJ's books and records, thus depriving him of the opportunity to shed light on their scheme to loot the company's assets.

13.     In furtherance of their scheme to deprive Small of his interest in DMRJ, Defendants have wrongly represented to the United States Bankruptcy Court in the Southern District of New York and the Grand Court of the Cayman Islands that DMRJ is wholly owned by PPVA. There can be no doubt that they knew these representations to be false. Indeed, Kennedy himself, in a sworn declaration, has pointed to the existence of DMRJ's minority-interest members, like Small, in support of DMRJ's complaint seeking declaratory relief in a separate New York state court action.

14.     Defendants have made misrepresentations to courts both here and abroad. They have denied Small his contractually-mandated distributions. They have refused to liquidate DMRJ for the benefit of its rightful members. Meanwhile, they are dissipating DMRJ's assets to fund PPVA's liquidation and pay their own fees. They have concealed these misdeeds from Small by refusing to allow him

access to DMRJ's books and records. This action is to right these wrongs and provide Small with the information and money to which he is rightfully entitled.

## PARTIES

15.     Plaintiff Daniel Small resides in New York, New York.

16.     Defendant Christopher Kennedy is a citizen of Ireland and a resident of the Cayman Islands.

17.     Defendant Martin Trott is, on information and belief, a citizen of the United Kingdom of Great Britain and Northern Ireland and a resident of the Cayman Islands.

## JURISDICTION AND VENUE

18.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, in that this is a civil action between a citizen of New York and citizens or subjects of a foreign state, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

19.     Venue is proper in this district under 28 U.S.C. § 1391(b)(3) in that Defendants are subject to the court's personal jurisdiction with respect to the claims asserted herein and there is no district in which an action may otherwise be brought as provided in 28 U.S.C. §§ 1391(b)(1) and (2).

## FACTUAL ALLEGATIONS

**A.    Investment Structure: PPVA, PMNY, DMRJ and the Implant Investment**

20.    PPVA is, according to its Second Amended and Restated Limited Partnership dated July 1, 2008, a Cayman Islands' exempted limited partnership that operated as a multi-strategy investment fund.

21.    As is common in the industry, PPVA used special purpose subsidiaries to make and hold a portfolio investments. Consistent with this practice, in August 2008, PPVA formed DMRJ to make and hold the portfolio investment in Implant Sciences Corp., a Massachusetts corporation engaged in the explosive trace detection market.

22.    DMRJ was created as a limited liability company organized and existing under the laws of the State of Delaware. Presently, DMRJ has no employees.

23.    In December 2008, DMRJ made an initial $5.6 million investment in Implant in the form of a secured note convertible into Implant common stock plus warrants to acquire additional shares of Implant common stock. From 2009 through 2015, DMRJ made additional investments in Implant and provided a revolving credit facility of tens of millions of dollars.

24.    Utilizing the capital provided by DMRJ, Implant was able to increase its marketing and sales efforts, win additional supply contracts, improve its product offerings and eventually secure federal regulatory approval to provide its equipment

in airports across the United States. Its improved prospects caused its share price to rise.

**B.    Small Becomes a Member of DMRJ: The Amended and Restated Operating Agreement**

25.    On January 1, 2011, the Amended and Restated Operating Agreement of DMRJ Group LLC (the "Operating Agreement") became effective. Up until this time, DMRJ had been wholly-owned by PPVA. Under the Operating Agreement, this was no longer the case. Instead, Small became a Member of the company, entitled to 6.5% of DMRJ's Net Profits (as that term is defined in the document). (Ex. A at §§ 6-8). PPVA, under the Operating Agreement, was a majority interest member of DMRJ and also served as its Operating Manager.

26.    The Operating Agreement also expressly grants Small the right, as a Member of the LLC, to examine and audit its books and records of the company. (Ex. A at § 11.1(C)).

**C.    The Success of the Implant Investment and DMRJ's Profits.**

27.    DMRJ was able to convert its notes in Implant into common stock and to sell the stock at a significant profit. Consequently, in 2012, 2013 and 2014 DMRJ's profits resulting from its sale of Implant stock totaled $38,187,483. This figure is exclusive of the profits DMRJ earned during this time from the revolving credit facility. On information and belief, the total profits DMRJ earned during this time, inclusive of interest on the revolving credit facility, amount to approximately $48 million.

28.     Moreover, according to Third Report of the Official Liquidators [of PPVA] to the Grand Court of the Cayman Islands, issued on March 8, 2018 (the "Third Report"), in May 2015, DMRJ assigned part of its interest in Implant's securities to Montsant Partners LLC ("Montsant"), a wholly-owned subsidiary of PPVA. In June 2017, as indicated in the Third Report, DMRJ and Montsant received approximately $55 million for their remaining interest in Implant. Of this amount, DMRJ received approximately $46 million.

**D.     PPVA's Cayman Island Bankruptcy, the Joint Liquidators, and the Misrepresentation of DMRJ's Ownership.**

29.      On August 23, 2016, PPVA filed a petition for voluntary liquidation in the Grand Court of the Cayman Islands. Beginning in October 2016, the Grand Court of the Cayman Islands placed PPVA under the control of Joint Liquidators. Presently, Defendants Christopher Kennedy and Martin Trott are PPVA's Joint Liquidators. DMRJ is a solvent U.S. company and not part of any bankruptcy proceeding, either in the Cayman Islands or in the United States.

30.     On October 18, 2016, PPVA filed a Chapter 15 Petition for Recognition of Foreign Proceeding in the United States Bankruptcy Court for the Southern District of New York. In connection with the Petition, Defendant Kennedy filed a sworn declaration, dated October 18, 2016, in which he represented to the court that DMRJ was a "wholly-owned subsidiary" of PPVA.

31.     On November 23, 2016, the United States Bankruptcy Court for the Southern District of New York entered an order directing, *inter alia,* that

PPVA's liquidation proceedings in the Cayman Islands be recognized as a foreign main proceeding under Chapter 15 of the Bankruptcy Code.

32.     Notably, on December 19, 2017, Defendant Kennedy signed another sworn declaration — this time in New York State Supreme Court. In that sworn statement, filed in the case *of DMRJ Group LLC v. B Asset Manager, L.P., et al.*, No. 655181/2017, Kennedy presented to the court quite a different picture of DMRJ's ownership, stating that "PPVA holds all ***or substantially all*** of the membership interests in DMRJ." (Ex. B at ¶ 9).

33.     Kennedy attached as an exhibit to his sworn statement the Operating Agreement, which reflects Small's membership interest in DMRJ. Kennedy cited various provisions of the Operating Agreement specifically referencing the rights of DMRJ's minority members, such as Small, to support DMRJ's arguments in opposition to B Asset Manager's motion to dismiss DMRJ's complaint. For instance, Kennedy stated, under oath, that the Operating Agreement "specifically limits" the authority of the Operating Manager to make certain decisions "without obtaining the consent of two-thirds in interests of the Members." (*Id.* at ¶ 15). Additionally, Kennedy stated that no amendment to the Operating Agreement "was permitted without the written consent of certain Profits Interest Members if such amendment would have an adverse interest on the Profit Interests' Member's rights to distributions and allocations thereunder." (*Id.* at p. 5, n. 2).

34.     Defendants, however, again misrepresented DMRJ's ownership just a few months later. Specifically, in their Third Report, Defendants state that DMRJ is

a "wholly owned subsidiary of the Master Fund." The "Master Fund," in the Third Report, refers to PPVA.

**E.    Defendants Have Breached the Provisions of the Operating Agreement Relating to Small's Distributions.**

35.    In their capacity as DMRJ's Operating Manager, Defendants have an obligation to ensure that Small receives distributions on a yearly basis in the amount of 6.5% of DMRJ's Net Profits. (Ex. A at §§ 6.5, 7.1, 7.2, 8.1 and 8.2).

36.    Defendants have refused to live up these obligations, denying Small his appropriate distributions for each fiscal year beginning in 2012.

37.    As noted above, 2012 through 2014 (inclusive), DMRJ received $38,187,483 from the sale of Implant common stock. Small is entitled to 6.5% of these funds — an amount that equals $2,482,186. Additionally, Small is entitled to 6.5% of the profits DMRJ earned from the revolving credit facility during this time period. However, Small has received only $218,662 of these total profits. Consequently, pursuant to the Operating Agreement, Small is entitled to receive at least $2.5 million (exclusive of interest and exclusive of the profits earned by DMRJ on the revolving credit facility) for calendar years 2012 through 2014.

38.    Small, through his counsel in the PPVA Cayman Island liquidation proceedings, has demanded that Defendants make, or cause DMRJ to make, the mandated distributions to Small. Defendants (in their capacity as the Operating Manager for DMRJ) have refused Small's demands.

39.    DMRJ has also made substantial profits after 2014. As noted above, since 2015, DMRJ and Montsant received at least $55 million from the sale of

Implant stock, of which DMRJ holds approximately $46 million. Nevertheless, Small has not received any distributions relating to the profits derived from these realizations.

**F.      Defendants Have Refused Small Access to DMRJ's Books and Records.**

40.      To determine how much money Small is owed for calendar years 2015 through 2017, DMRJ's Net Profits during this time period must be calculated. Defendants, however, have withheld this information from Small.

41.      Small, through his counsel, has demanded access to DMRJ's books and records. For instance, in a letter dated August 9, 2017, Small's counsel in the Cayman Islands made a clear request to Kennedy:

> In order to assist Mr. Small in determining the full amount of his profits entitlement pursuant to the DMRJ Operating Agreement, we also request, on behalf of Mr. Small, that this firm be given access to the books and records of DMRJ for examination purposes pursuant to Section 11.1(C) of the DMRJ Operating Agreement.

42.      Kennedy refused this demand despite Small's unequivocal right, under Section 11.1(C) of the Operating Agreement and Delaware law, to access DMRJ's books and records.

**G.      Defendants Are Wrongfully Dissipating DMRJ's Assets.**

43.      Defendants were appointed as Joint Liquidators to wind up the affairs of PPVA and to maximize the value of PPVA's assets for the benefit of its investors and creditors. Nothing authorizes Defendants, however, to use DMRJ — a non-debtor that is not a party to any bankruptcy proceeding — as the piggybank for

their efforts. But this is precisely what they have done, despite their stated role (and attendant obligations) as the Operating Manager of, and the persons who control, DMRJ.

44.     According to the Third Report, as of December 31, 2017, PPVA had a cash balance of $44,951,809.50. More than 97% of this money — $43,820,775 — as the Third Report indicates, is attributed to DMRJ.

45.     Defendants have stated that their intent is to use this cash and deplete DMRJ's assets for the benefit of PPVA as soon as possible. By way of example, in the Third Report, Defendants informed the Grand Court of the Cayman Islands that they intend to pay a secured creditor of PPVA $8.5 million. They also indicated that there are additional similarly-situated secured creditor claims of PPVA in the amount of $45 million being evaluated for payment. On March 21, 2018, according to the Minutes of the Official Meeting of the Master Fund's Creditors, Defendants said they intend to resolve these claims "as quickly as possible."

46.     Defendants have also stated their plan to use DMRJ's assets to fund their legal and administrative expenses. As of December 31, 2017, according to the Third Report, these expenses totaled $11,877,990. In their Third Report, Defendants state that they "are currently preparing their first fee application," which is "expected to be filed with the Grand Cayman shortly."

47.     Notably, Defendants indicated in their Third Report that *less than one percent* of these expenses — $70,453 — is attributable to DMRJ. Because more than 97% of the PPVA's cash balance belongs (by Defendants' own admission) to

DMRJ, Defendants are funding their own operations as Joint Liquidators with

DMRJ's funds.

48.     Defendants have consumed DMRJ's resources by, among other things,

causing DMRJ to commence multiple litigations in New York State Supreme Court.

Specifically, Defendants have caused DMRJ to file the following lawsuits: *DMRJ*

*Group, LLC v. B Asset Manager L.P.*, *et al.*, No. 655181/2017; and *DMRJ Group*

*LLC v. West Loop South LLC et al.*, No. 653019/2017. In the *B Asset Manager*

lawsuit, Defendant Kennedy filed a sworn declaration with the court. Additionally,

in connection with the Chapter 15 petition that the Defendants filed in the United

States Bankruptcy Court for the Southern District of New York, they have

mispresented to the court that PPVA wholly owns DMRJ.

## FIRST CAUSE OF ACTION
### Breach of Contract

49.     Small repeats and reallages paragraphs 1 through 48, inclusive, as if

set forth fully herein.

50.     Small and Defendants (in their capacity as Operating Manager for

DMRJ) are parties to the Operating Agreement, which is a valid, enforceable

contract.

51.     Pursuant to the Operating Agreement, Small is entitled to receive as

distributions 6.5% of the company's Net Profits for each of the years 2012 through

2017 (inclusive).

52.     Defendants have refused Small's demands for such payments and have

failed to make such payments, or cause DMRJ to make such payments, to Small.

53.     As a proximate result of Defendants' breach of the Operating Agreement, Small has suffered direct damages of at least $2.5 million dollars, the precise amount of which will be determined at trial.

54.     Small has no adequate remedy at law to enforce payment from Defendants (acting in their capacity as Operating Manager of DMRJ) of the amounts he is owed under the Operating Agreement. Accordingly, Small is entitled to an order compelling Defendants to cause DMRJ to distribute to him monies of at least $2.5 million, the precise amount of which will be determined at trial.

## SECOND CAUSE OF ACTION
### Breach of Contract

55.     Small repeats and realleges paragraphs 1 through 48, inclusive, as if set forth fully herein.

56.     Small and Defendants (in their capacity as Operating Manager of DMRJ) are parties to the Operating Agreement, which is a valid, enforceable contract.

57.     Pursuant to the Operating Agreement, Small has the right to have his accountants and representatives examine and/or audit the books and records of DMRJ.

58.     Small has made demands upon Defendants for access to the company's books and records. Defendants have refused all such demands.

59.     Small has no adequate remedy at law to enforce Section 11.1(C) of the Operating Agreement. Accordingly, Small is entitled to an order compelling the Defendants to comply with Section 11.1(C) by permitting Small's accountants or

representatives to examine and/or audit the books and records of the company as well as other information referenced in Section 11 of the Operating Agreement.

**THIRD CAUSE OF ACTION**
**Access to Books and Records – Del. Code 6 § 18-305(a)**

60.     Small repeats and realleges paragraphs 1 through 48, inclusive, as if set forth fully herein.

61.     Small is a member of DMRJ, a limited liability company incorporated under the laws of Delaware.

62.     On August 9, 2017, Small, through his counsel, made a written demand upon Defendant Kennedy (in his capacity as Operating Manager for DMRJ) for access to the company's books and records, consistent with the company's obligations under Section 11.1(C) of the Operating Agreement.

63.     In the letter, Small stated the purpose of the demand – to assist Small in determining the amount of DMRJ's Net Profits to which he is entitled under the Operating Agreement.

64.     Defendants have refused Small's request.

65.     Accordingly, Small is entitled to an order compelling Defendants to immediately allow Small to obtain the books, records, and other information of the company necessary for Small to determine the Net Profits of DMRJ for calendar years 2015 through 2017 (inclusive).

## FOURTH CAUSE OF ACTION
### Accounting
### (In the Alternative)

66.     Small repeats and realleges paragraphs 1 through 48, inclusive, as if set forth fully herein.

67.     Small is a minority member of DMRJ.

68.     Defendants, by their own repeated admissions, are the Operating Manager of DMRJ and control the company. Defendants are, therefore in a fiduciary relationship with Small regarding, among other things, the assets of DMRJ.

69.     Defendants have engaged in misconduct, including making false representations to the United States Bankruptcy Court for the Southern District of New York, refusing to liquidate DMRJ as required under the Operating Agreement, and dissipating DMRJ's assets (a portion of which belong to Small) for their benefit.

70.     Defendants have further breached their fiduciary duties to Small by, among other things, using DMRJ funds to satisfy obligations they have to another entity — PPVA — and incurring fees for their work that will necessarily be paid using DMRJ funds. They have also deprived Small of access to basic information about the company, even though such information is crucial to determining Small's distributions under a valid contract.

71.     Small has made a demand for an accounting, specifically requesting, through his counsel, the money he is owed under the Operating Agreement. Defendants have refused this demand.

72.     Small has no adequate remedy at law.

73.     Accordingly, Small is entitled to an accounting to determine DMRJ's Net Profits (as defined in the Operating Agreement) for 2012 through 2017 (inclusive) and for an award of all sums found to be owing to him as a result of such accounting.

## FIFTH CAUSE OF ACTION
### Tortious Interference with Contract
### (In the Alternative)

74.     Small repeats and realleges paragraphs 1 through 48, inclusive, as if set forth fully herein.

75.     Defendants tortuously interfered with the Operating Agreement, a valid contract by and between, among other parties, Small and PPVA.

76.     Defendants had knowledge of the Operating Agreement.

77.     Defendants intentionally procured PPVA's following breaches of the Operating Agreement:

        a.      Refusing to make, or cause to made, distributions to Small in accordance with various provisions of the Operating Agreement; and

        b.      Refusing to provide Small with the books and records of DMRJ.

78.     Kennedy's and Trott's procurement of PPVA's breaches of the Operating Agreement constituted, individually and collectively, a wanton or reckless disregard for Small's rights.

79.     As a result of Kennedy's and Trott's actions, Small has suffered damages in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter a judgment against Defendants on the foregoing causes of action as follows:

1.     Under the First Cause of Action, for an order compelling Defendants to cause DMRJ to make distributions to Small in an amount to be determined at trial;

2.     Under the Second Cause of Action, for an order compelling Defendants to comply with Section 11.1(C) of the Operating Agreement by permitting Small's accountants or representatives to examine and/or audit the books and records of the company as well as any other information referenced in Section 11 of the Operating Agreement;

3.     Under the Third Cause of Action, an order compelling Defendants to allow Small to obtain the books, records, and other information of the company necessary for Small to determine the Net Profits of DMRJ for calendar years 2015 through 2017 (inclusive).

4.     In the alternative, under the Fourth Cause of Action, an order compelling Defendants to (i) perform an accounting to determine the Net Profits (as defined in the Operating Agreement) of DMRJ for 2012-2017 (inclusive) and (ii) to cause DMRJ to make distributions to Small of all sums due and owing him as a result of such accounting;

5.     In the alternative, under the Fifth Cause of Action, damages in an amount to be determined at trial as well as punitive damages;

6.     Pre-judgment and post-judgment interest; and

7.      Such other and further relief as the Court may deem just and proper.

Dated:  June 20, 2018
        New York, New York

TAYLOR & COHEN LLP


By:    /s/ Robert Cohen
       Rob Cohen
       Zachary S. Taylor
       40 Worth Street, 10th floor
       New York, NY 10013
       Tel. (212) 257-1900
       Fax (646) 808-0966
       rcohen@taylorcohenllp.com
       ztaylor@taylorcohenllp.com

       *Attorneys for Plaintiff Daniel Small*