# Holland & Knight

31 West 52nd Street | New York, NY 10019 | T 212.513.3200 | F 212.385.9010
Holland & Knight LLP | www.hklaw.com

Warren E. Gluck
(212) 513-3396
warren.gluck@hklaw.com

June 25, 2018

*Via ECF*

Hon. P. Kevin Castel
United States District Judge
U.S. District Court for the Southern District of New York
500 Pearl Street, Room 2260
New York, New York 10007

      Re:    *Daniel Small v. Christopher Kennedy and Martin Trott*
               Case No. 18-cv-5000 (PKC)

Dear Judge Castel:

    This firm represents defendants Christopher Kennedy and Martin Trott, who are sued in their capacities as the Operating Managers of DMRJ, Group LLC (collectively, the "Defendants") in the above referenced action. On June 22, 2018 Defendants submitted a letter to this Court requesting further guidance on the nature of the upcoming conference currently scheduled to take place at 2:00 pm on July 16, 2018, namely, whether the conference is an evidentiary conference. Additionally, Defendants requested an opportunity to depose Plaintiff, Daniel Small ("Plaintiff" or "Mr. Small"), in this action, on an expedited basis, in connection with his request for a preliminary injunction.

    As advised by Defendants, the planned deposition is expected to include issues relevant to the likelihood of success on the merits of Plaintiff, including but not limited to the assets managed by Plaintiff pursuant to his Investment Management Agreement, the value of those assets, and certain alleged breaches of fiduciary duties by Plaintiff which obviate his purported right to recovery in this case.

    Late Sunday evening, Plaintiff's counsel filed a responsive letter asserting that the subjects of Defendants' discovery request are not relevant to Mr. Small's claims, and accordingly, should be denied. Like the complaint and the papers supporting his motion for a preliminary injunction, Plaintiff's counsel's letter is entirely disingenuous, in that it fails to provide the Court with key facts necessary to understand why Plaintiff cannot establish a likelihood or even any basis that he will succeed on the merits of his claims. To remedy this situation, Defendants respectfully submit this information here.

Hon. P. Kevin Castel
June 25, 2018
Page 2

**The PPVA Collapse**

Defendants are the duly appointed joint official liquidators ("Liquidators") of Platinum Partners Value Arbitrage Fund L.P. (in Official Liquidation) ("PPVA"). By orders entered on August 25, October 27 and December 16, 2016, and September 29, 2017, the Grand Court of the Cayman Islands (the "**Cayman Court**") placed PPVA into first provisional, then official liquidation and appointed the Liquidators as its joint official liquidators (the "**Cayman Liquidation**"). On November 23, 2016, the Bankruptcy Court for the Southern District of New York entered an Order recognizing the Cayman Liquidation of PPVA as a foreign main proceeding and the Liquidators as PPVA's duly appointed foreign representatives pursuant to chapter 15 of the United States Bankruptcy Code, 11 U.S.C. §101, *et seq.*

Before the Cayman Liquidation, PPVA was a Cayman Islands based master fund that purported to hold over $1 billion in net assets under management. PPVA utilized various subsidiaries, including DMRJ Group, LLC ("DMRJ") to invest in various sectors, such as oil and gas, biotech, pharma, and technology. PPVA is the sole operating member of DMRJ. Until the Liquidators were appointed, PPVA, DMRJ and PPVA's other subsidiaries were managed by Platinum Management (NY), LLC ("**Platinum Manager**"), and persons employed by Platinum Manager. Those persons included Plaintiff.

In his complaint, Mr. Small alleges that he is owed a profits interest pursuant to the Amended and Restated Operating Agreement of DMRJ. What Mr. Small fails to mention in his First Amended Complaint and Motion for preliminary relief is that he is the subject of criminal and SEC proceedings in connection with an alleged billion dollar fraud perpetrated on innocent investors and creditors of PPVA and DMRJ, which ultimately resulted in the financial collapse of PPVA and breached Mr. Small's fiduciary obligations to its investors and creditors. Mr. Small also fails to mention that any so called "profits interest" was also subject to the terms of the investment management agreements between Mr. Small and Platinum Management (NY) LLC, Platinum Liquid Opportunity Management (NY) LLC (together, "**Platinum Management**") by which he managed the investments that PPVA made via DMRJ and other entities, When those agreements are read in context, Mr. Small is not owed anything.

The Cayman Liquidation is the largest fund collapse since Bernie Madoff. Many of the former principals and senior executives of Platinum Management, the former manager of PPVA, including Mr. Small, have been indicted on federal charges in both the Eastern District of New York, as well as the Southern District of New York. A true and correct copy of the E.D.N.Y. criminal complaint is attached hereto as Exhibit 1. The Securities and Exchange Commission has brought parallel proceedings as a result of which Platinum's control of PPVA's affiliated U.S. based funds has been placed in the hands of a receiver. A true and correct copy of the SEC Complaint is attached hereto as Exhibit 2. Mr. Small is a defendant in each of those proceedings, as well as additional civil proceedings brought by various victims. The alleged tortious and criminal acts of Mr. Small, among others, caused or materially contributed to the financial collapse of PPVA.

**Mr. Small's Employment with Platinum and DMRJ**

Before the Cayman Liquidation was commenced and the Liquidators were appointed, PPVA, DMRJ and PPVA's other subsidiaries were managed by Platinum Manager and persons employed by Platinum Manager. Those persons included Mr. Small. In connection with Mr. Small's employment with Platinum Management as a portfolio manager of PPVA's assets, Mr. Small entered into several substantially similar Investment Management Agreements with Platinum Management. A true and correct copy of the Amended and Restated Investment Management Agreement dated March 11, 2012 (hereinafter the "**Small IMA**") is attached hereto as Exhibit 3.

The Small IMA governed both Mr. Small's obligations to the fund, as well as his compensation, including the manner of calculation, which, as typically seen for investment managers, tied Mr. Small's compensation to the performance of his managed investments. The Small IMA provides that Small was to receive an annual Base Salary of $180,000, plus a "Bonus" (*see* Small IMA Section 3(a) and (b)). Small's Bonus under the IMA was to be calculated on a per-calendar-year basis, based upon a percentage of Platinum's total ***"Net Profits"*** across all of Small's "Accounts" during that calendar year (emphasis supplied). Small's annual base salary would then be deducted from any potential annual Bonus calculated as set forth above, as well as any "Profits Interests" distributions Small received pursuant to any Platinum-related profits interest agreements (including, for example, the 2011 Amended DMRJ Operating Agreement) (*see* Small IMA Section 3(b)). Additionally, Mr. Small's bonus structure provided for a "loss carry forward," in which if in one calendar year Small's managed accounts collectively suffer a net loss, the amount of the net loss shall be carried forward to the next calendar year(s), thus offsetting the Net Profits from the next year(s), thereby being reflected in Mr. Small's bonus for as many subsequent years as is required to be fully offset by any Net Profits (*see* Small IMA Section 3(c)).

In connection with Mr. Small's management of DMRJ investments, Mr. Small also entered into an Operating Agreement of DMRJ. A true and correct copy of the Amended and Restated Operating Agreement of DMRJ Group LLC dated January 1, 2011 (hereinafter "DMRJ Operating Agreement") is attached to the Amended Complaint as Exhibit A (Dkt. 18-1). Section 8.2 of the 2011 Amended DMRJ Operating Agreement provides in relevant part that "the Net Profits of the Company" are to be allocated 90% to PPVA, with up to 10% of DMRJ's Net Profits allocated as follows: Small to receive the ***lesser*** of 6.5% of DMRJ's Net Profits and Small's "Adjusted Profits Amount," [under the Investment Management Agreement] with Profits Member Levy receiving the lesser of 3.5% of DMRJ's Net Profits and Levy's "Adjusted Profits Amount." It is clear that the 2011 Amended DMRJ Operating Agreement, and the applicable IMA (here, the Small IMA), are intended to be read together as a single, coherent economic arrangement. The profit-based "Bonus" paid pursuant to the Small IMA deducted profit interests paid pursuant to the 2011 Amended DMRJ Operating Agreement (and/or other similar operating agreements granting net profit interests), and vice versa.

Hon. P. Kevin Castel
June 25, 2018
Page 4

In the Small IMA, Mr. Small covenants to perform his services with respect to Account investments "using a commercially reasonable professional standard of care," to act "solely in the interest of the Account," and to act "in accordance with the provisions of . . . all applicable federal, state and foreign laws and regulations" (*see* Small IMA Section 4(a)(i)). Breach of these covenants is one of the enumerated grounds pursuant to which the Small IMA may be terminated for "Cause" (*see* Small IMA Section 1(d)). Specifically, if Mr. Small were to be convicted of the allegations in the Criminal and SEC Actions, it would prove that he had breached the Investment Management Agreement and his fiduciary duties with respect to DMRJ and PPVA, *inter alia,* making him ineligible to receive profit interest payments in relation to DMRJ and giving rise to claims by DMRJ and PPVA against him. Regardless of the outcome of the Actions, it is clear that based on the true value (*i.e*., lack of profit) of the Platinum entities under Mr. Small's management during his employment, any net DMRJ profit will be offset by the massive losses caused by Mr. Small's alleged fraudulent actions.

**Mr. Small's Claim**

Based on the criminal indictment, the SEC complaint, the Liquidators' investigations, it is clear that Mr. Small engaged in acts and transactions that grossly inflated reported asset values so as to increase the fees payable to management (including himself), and created a class of tort creditors against PPVA and its subsidiaries, all to the detriment of PPVA. As such, Mr. Small cannot be said to have earned any bonus for his efforts, as he violated the terms of his investment management agreement and all so called "profits" upon which any alleged bonuses may previously have been calculated were fictitious or, at a minimum, substantially overstated. It is clear that he is not entitled to any payments under his investment management agreement and is not entitled to any payments based on his supposed profits interest in DMRJ. The losses associated with the various other positions he managed offset any net profit that ultimately may be realized by DMRJ, and under the clear terms of his investment management agreement losses from one year carry forward into future years.

Having helped to bankrupt PPVA as well as its many investment vehicles, Mr. Small is seeking to recover against the sole entity under his management that generated actual returns as opposed to incredible losses by asserting an entitlement to a portion of its net profits. This claim fails to take into account that any "bonus" Mr. Small was due under his investment management agreement (including but not limited to the DMRJ Profit Interest) was to be calculated across <u>all</u> of the assets Mr. Small was charged with managing, nearly all of which were, in fact, loss making or were valued improperly by Mr. Small. Mr. Small's claim similarly does not take into account the well-founded position that he breached his fiduciary duties and engaged in criminal conduct that further devalued both DMRJ and PPVA.

Notwithstanding the lack of merit to Plaintiff's claim, the Defendants, as Liquidators of PPVA and Operating Managers of DMRJ, are court-supervised fiduciaries who are bound by Delaware law in their management of the assets of DMRJ for the benefit of innocent investors and creditors. Accordingly, the operating managers of DMRJ must undertake analysis of its known

Hon. P. Kevin Castel
June 25, 2018
Page 5

and expected liabilities and establish reserves for the payment of the same before it can distribute assets to its members. *See* Del. Code Ann. 6 §18-804. Accordingly, Defendants have evaluated (and continually re-evaluate, where appropriate), the reasonable expected value of the many claims against DMRJ, and have maintained reasonable assets and cash reserves both at the DMRJ and PPVA level. This includes Mr. Small's disputed claim.

In February 2018 Mr. Small demanded that he be paid his profit interest from DMRJ assets and to see books and records. Both requests were rejected because Mr. Small's claim was not accepted and the Liquidators consider Mr. Small to be a security risk and are not prepared to provide him with any information concerning PPVA or its subsidiaries, or the conduct and course of the Cayman Liquidation. Nevertheless, undersigned counsel confirmed to Mr. Small in writing that the Liquidators in their capacities as Operating Managers of DMRJ, are in fact acting in accordance with their obligations, and that an appropriate reserve is being maintained ("Small Claim Email"). A true and correct copy of the email correspondence is attached hereto as Exhibit 4.

Based on the foregoing, Defendants submit that Plaintiff's claim is not a simple or straightforward breach of contract dispute, as disingenuously argued by Plaintiff's counsel in his letter dated June 24, 2018 (Dkt. 24). Substantial issues concerning the merits of Plaintiff's claim exist, specifically relating to Plaintiff's role in the PPVA collapse, which suggest that Defendant has breached his obligations under the contracts governing his employment with Platinum Management, which cannot be separated from the agreed profit interest compensation under the DMRJ Operating Agreement. Based on Plaintiff's own request for extraordinary relief in the form of a preliminary injunction restraining $6 million in cash to secure his claim against DMRJ, Defendants should be entitled to depose Plaintiff further regarding his acts taken in connection with PPVA and DMRJ, as alleged in the criminal indictment and SEC complaint.

We thank the Court for its attention to this matter.

Respectfully submitted,

HOLLAND & KNIGHT LLP

/s/

Warren E. Gluck

Cc: All counsel of record (via ECF)