Warren E. Gluck
Robert J. Burns
Marie E. Larsen
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, New York 10019
Telephone: 212-513-3200
Facsimile:  212-385-9010
Email:  warren.gluck@hklaw.com
        robert.burns@hklaw.com
        marie.larsen@hklaw.com

*Attorneys for Defendants*
*Christopher Kennedy and Martin Trott*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL SMALL,<br><br>                    Plaintiff,<br><br>- against -<br><br>CHRISTOPHER KENNEDY, in his capacity as the Operating Manager of DMRJ Group LLC; and MARTIN TROTT, in his capacity as the Operating Manager of DMRJ Group LLC,<br><br>                    Defendants. | Case No. 18-cv-5000 (PKC) |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

## <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

TABLE OF AUTHORITIES ............................................................................... ii

INTRODUCTION ............................................................................................... 1

FACTUAL BACKGROUND ............................................................................... 3

I.      THE PLATINUM COLLAPSE ................................................................ 3

II.     CRIMINAL AND SEC PROCEEDINGS AGAINST DANIEL SMALL ......................... 4

III.    SMALL INVESTMENT MANAGEMENT AGREEMENT AND DMRJ OPERATING AGREEMENT ............................................................... 5

IV.    SMALL'S BONUS ARBITRATION ....................................................... 7

V.     DMRJ FUNDS AND DELAWARE FIDUCIARY DUTIES ............................... 8

VI.    THE COMPLAINT AND REQUESTED INJUNCTIVE RELIEF .................. 10

ARGUMENT ................................................................................................... 12

VII.   PLAINTIFF IS NOT ENTITLED TO A PRELIMINARY INJUNCTION ..................... 12

    A.    There is no Risk of Irreparable Harm Here ............................... 12

        i.    DMRJ is being Managed by Court Appointed Fiduciaries and Funds are not Being Dissipated ............................................................... 13

        ii.   Plaintiff Cannot Establish Irreparable Harm Because He Alleges Only Money Damages ................................................................... 16

    B.    Small is Not Likely to Succeed on the Merits of His Breach of Contract Action ......... 18

        i.    Small is Not Entitled to Recover under the DMRJ Operating Agreement Where He Has Breached His Duties Under the Investment Management Agreement and Caused the Financial Collapse of PPVA and its Subsidiaries ............................. 18

        ii.   Losses at Black Elk and Other Investments Managed by Plaintiff Offset any Profits Interest to Which He Might Otherwise be Entitled ......................... 20

    C.    The Balance of Hardships and Equities Weighs in Defendants' Favor Where Injunction Will Disrupt the Fund and Plaintiff Should not Benefit from His Criminal Conduct ................................................................... 22

CONCLUSION ................................................................................................. 24

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Almontaser v. New York City Department of Education*,
 519 F.3d 505 (2d Cir. 2008)......................................................................12

*In re Bernard L. Madoff Inv. Secs. LLC*,
 458 B.R. 87 (Bankr. S.D.N.Y. 2011)..........................................................16

*Brenntag Int'l Chem. Inc. v. Bank of India*,
 175 F.3d 245 (2d Cir. 1999)...................................................................16, 17

*Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*,
 598 F.3d 30 (2d Cir. 2010)........................................................................12

*DMRJ Group LLC v. West Loop South LLC, et al.*,
 Index No. 653019-2017 (N.Y. Sup. Ct. N.Y. Co.) .....................................9

*Dong v. Miller*,
 No. 16-5836, 2018 WL 1445573 (E.D.N.Y. March 23, 2018).................17

*Doninger v. Niehoff*,
 527 F.3d 41 (2d Cir. 2008).........................................................................22

*F.T.C. v. Warner Communications Inc.*,
 742 F.2d 1156 (9th Cir. 1984) ...................................................................23

*In re First Republic Group Realty, LLC.*,
 421 B.R. 659 (Bankr. S.D.N.Y. 2009)........................................................17

*In re Platinum Partners Value Arbitrage Fund L.P.*,
 583 B.R. 803 (Bankr. S.D.N.Y. 2018).......................................................17

*Gulf Coast Produce, Inc. v. American Growers, Inc.*,
 No. 07-80633, 2007 WL 2302109 (S.D. Fla. Aug. 8, 2007) ....................17

*Mullins v. City of New York*,
 634 F. Supp. 2d 373 (S.D.N.Y. 2009).........................................................16

*N.Y. Progress & Prot. PAC v. Walsh*,
 733 F.3d 483 (2d Cir. 2013)........................................................................18

*Overweight Counterbalance Elevator Co. v. Cahill & Hall Elevator Co.*,
 86 F. 338 (C.D. Cal. 1898)..........................................................................17

*Silberberg v. Board of Elections of the State of New York*,
  216 F. Supp. 3d 411, 416 (S.D.N.Y. 2016)..................................................................12

*U.S. ex. rel. Willoughby v. Howard*,
  302 U.S. 309 (1938).......................................................................................................15

**Statutes**

Del. Code. Ann. 6 § 18-607 .......................................................................................13, 14

Del. Code Ann. 6 § 18-804 ...............................................................................................14

Del. Code Ann. 6 § 18-1101(c)...........................................................................................9

Del. Code Ann. 6 § 1104 .....................................................................................................9

15 U.S.C.§ 80b-1 *et seq.* ....................................................................................................5

15 U.S.C. § 77a *et seq.*........................................................................................................5

**Other Authorities**

Fed. R. Civ. P. 65 .................................................................................................................1

Defendants Christopher Kennedy ("Kennedy") and Martin J. Trott ("Trott"), in their capacities as the Operating Managers of DMRJ Group LLC (the "Liquidators" or "Defendants")[1] hereby file this Memorandum of Law and the accompanying Declaration of Martin Trott ("Trott Decl.") in opposition to Plaintiff Daniel Small's ("Small" or "Plaintiff") Motion for a Preliminary Injunction pursuant to Fed. R. Civ. P. 65 (the "Motion"), seeking to restrain $6 million in a cash during the pendency of this action (Dkt. 12).

## INTRODUCTION

Plaintiff's motion for a preliminary injunction is wholly without merit, should be denied in its entirety, and attorneys' fees and costs associated with this motion should be awarded to Defendants.

Small is seeking an injunction against court appointed fiduciaries serving as operating managers in relation to a heavily disputed demand for an equity distribution under circumstances where he was <u>both</u> promised that Delaware law concerning reserves and disputed claims would be followed, <u>and</u> failed to inform the Court of this fact. His "evidence" that the Liquidators intend to defeat his rights is not evidence at all, but rather an out-of-context and outdated general creditors' report that is in no way incompatible with the Liquidators' assurances that they have and will continue to abide by their fiduciary obligations as officers of the Cayman court and under Delaware law. To be clear, the Liquidators have and will continue to take reasonable and suitable measures in respect of any and all disputed claims against and alleged interests in DMRJ Group LLC ("**DMRJ**"), of which Small's is but one. That Small determined to use this outdated report to stakeholders of PPVA as a pretext to seek an injunction even though he repeatedly has been

---

[1] Mr. Kennedy recently resigned from RHSW and as a result, will be replaced as a joint official liquidator of PPVA and an operating manager of DMRJ in the near future. Undersigned counsel will inform the Court when the Cayman Court enters an order appointing a replacement liquidator.

informed orally and in writing that his demand had been duly accounted for is nothing short of astonishing.

In sum, the purported harm Small seeks to avoid by this injunction is fictitious, and in any event the harm would merely be money damages, for which there is a remedy under both Delaware and Cayman law, and is by definition not "irreparable."

Compounding matters further, he declined to inform the court about related, stayed proceedings concerning his corresponding claim against Platinum Management and the fact that he was indicted for criminal conduct that goes to the very heart of his purported right to a profits-based bonus.  He also failed to inform the Court that any and all rights he purportedly holds as a "profits interests" member of DMRJ derive from an investment management agreement that specifically requires his compensation (including any rights in DMRJ), to be calculated across the performance of _all the assets under his management_.

The simple fact is that neither PPVA, nor the assets he managed for PPVA aside from DMRJ, were profitable.  The values ascribed to PPVA's assets were inflated and former Platinum management, including Small, engaged in a conspiracy that created an entire class of tort creditors with claims against PPVA, as well as the assets Small managed.

The Liquidators are overseeing the liquidation of PPVA and all of its assets, including DMRJ, for the benefit of all stakeholders, under difficult circumstances and without assistance from former management.[2]  As such, the public policy and balance of harms tips decidedly in Defendants' favor as well.  This action appears to be aimed at extracting a nuisance payment or blackmail the Liquidators, and for this reason alone should not be countenanced.   Under the

---

[2] _In re Platinum Partners Value Arbitrage Fund L.P._, 583 B.R. 803, 821(Bankr. S.D.N.Y. 2018) (holding that Liquidators are entitled to discovery from auditors Cohn Reznick particularly due to the "lack of cooperation from the Fund's officers").

2

circumstances and for the reasons set forth below, the requested injunction should be denied and attorneys' fees awarded.

## FACTUAL BACKGROUND

### I.      The Platinum Collapse

Until August 2016, Platinum Partners Value Arbitrate Fund L.P. ("**PPVA**") was a Cayman Islands-based investment fund with a purported net asset value ("**NAV**") of over $1.4 billion. PPVA invested directly and through subsidiaries in various sectors, including oil and gas, biotech, other technology, pharmaceuticals and consumer products.  DMRJ was one such subsidiary. Declaration of Martin Trott (hereinafter "Trott Decl.") ¶ 26.

During this period, PPVA, DMRJ and PPVA's other subsidiaries were managed and operated by Platinum Management NY LLC ("**Platinum Management**") and its personnel, including Mr. Small.  Platinum Management managed various investments of PPVA, as well as the investments of other Platinum-related funds, such as Platinum Partners Credit Opportunities Master Fund L.P. ("**PPCO**") and Platinum Partners Liquid Opportunity Master Fund L.P. ("**PPLO**").[3] Trott Decl. ¶ 28.

Despite representing having a purported NAV of over $1.4 billion, most of PPVA's purported assets and investments, including those managed by Small, actually had little or no value, were transferred to other entities (for the benefit of insiders), or were under-water due to purported subsidiary-level encumbrances and tort claims caused by Small's conduct (among others).  Trott Decl. ¶ 29.  One of the positions for which Mr. Small and other Platinum Management executives served as portfolio manager was PPVA's investment in Black Elk, an oil and gas company.  Mr. Small also had a similar "profits interest" in Black Elk.  Mr. Small and

---

[3]Both PPCO and PPLO are under SEC Receivership, and former Chief Bankruptcy Judge for the Eastern District of New York Melanie Cyganowksi is the receiver appointed by the SEC.

3

other Platinum Management executives engaged in a scheme to divert the vast majority of Black Elk's assets to entities controlled by Platinum Management or other insiders (the "**Black Elk Scheme**").  Small was indicted by the United States Attorney for the Eastern District of New York in connection with the Black Elk Scheme.  Trott Decl. ¶ 30.

By orders entered on August 25, October 27 and December 16, 2016 and September 29, 2017, the Grand Court of the Cayman Islands (the "**Cayman Court**") placed PPVA into first provisional, then official liquidation, and appointed the Liquidators as its joint official liquidators (the "**Cayman Liquidation**").  Trott Decl., Ex. 1.  On November 23, 2016, the Bankruptcy Court for the Southern District of New York entered an Order recognizing the Cayman Liquidation of PPVA as a foreign main proceeding and the Liquidators as PPVA's duly appointed foreign representatives pursuant to chapter 15 of the United States Bankruptcy Code, 11 U.S.C. §101, *et seq.* ….  Trott Decl. Ex. 2.

## II.   Criminal and SEC Proceedings Against Daniel Small

On December 19, 2016 a criminal indictment was filed by the United States Attorney for the Eastern District of New York, pending as Case No. 16-cr-00640 (the "**Criminal Action**").  Trott Decl., Ex. 3.  The indictment in the Criminal Action states charges against Mr. Small, as a former portfolio manager whose employment with Platinum Management terminated in 2015, and five other executives associated with Platinum Management.*Id.*  The charges included Securities Fraud, Conspiracy to Commit Securities Fraud, Investment Advisor Fraud, Wire Fraud and Conspiracy to Commit Wire Fraud.  *Id.*

The complaint in the Criminal Action alleges that between November 2011 and December 2016, the criminal defendants, including Mr. Small (until his termination in July 2015), engaged in a scheme to deprive Black Elk bondholders of proceeds of the sale of Black Elk's most lucrative

assets through material misrepresentations and omissions about, among other things, PPVA's ownership of and control over the Black Elk bonds and the relationship between Beechwood and Platinum. *See* 16-cv-640, Dkt. 1 at 73-87, 99-105. In fact, the events concerning the Black Elk bonds occurred during 2014, while Mr. Small was the Platinum Management portfolio manager with direct oversight over PPVA's Black Elk investment. Trott Decl. ¶ 32.

Also on December 19, 2016, a parallel civil case was filed by the SEC against Small and other Platinum Management executives, pending in the United States District Court for the Eastern District of New York as Case No. 16-cv-06848, alleging civil damages for violations of, among other things, the Investment Advisors Act of 1940, 15 U.S.C.§ 80b-1 *et seq.* and the Securities Act of 1933, 15 U.S.C. § 77a *et seq.* ("**SEC Action**"). Trott Decl., Ex. 4.

The mismanagement and alleged acts of Mr. Small, among others, caused or materially contributed to the financial collapse of PPVA. Trott Decl. ¶ 34.

## III.   Small Investment Management Agreement and DMRJ Operating Agreement

In connection with Mr. Small's employment with Platinum Management as a portfolio manager of PPVA's assets, Mr. Small entered into several substantially similar Investment Management Agreements with Platinum Management (the "**Small IMA**"). Trott Decl., Ex. 5. The Small IMA governed both Mr. Small's obligations to PPVA, as well as his compensation, including the manner of calculation; as was customary for investment managers, Mr. Small's compensation was tied to the performance of his managed investments. Trott Decl. ¶ 36.

The Small IMA provides that Small was to receive an annual Base Salary of $180,000, plus a "Bonus." Small IMA Section 3(a) and (b). Small's "Bonus" was to be calculated on a per-calendar-year basis, based upon a percentage of PPVA's total ***"Net Profits"*** across all of Small's "Accounts" during that calendar year (emphasis supplied). Small's annual base salary would then

be deducted from any potential annual Bonus calculated as set forth above, as well as any "Profits Interests" distributions Small received pursuant to any PPVA-related profits interest agreements, including, for example, the DMRJ Operating Agreement (defined below).  Small IMA Section 3(b).  The Small IMA also provided for a "loss carryforward" by which his Bonus would be reduced by the amount of any net loss to his managed accounts resulting in a particular calendar year, with the amount of such net loss to be carried forward in future calendar year(s), thus offsetting the "Net Profits' from those future year(s).  This net loss would be reflected in Mr. Small's bonus for as many subsequent years as would be required to be fully offset by any Net Profits.  Small IMA Section 3(c).

In connection with Mr. Small's management of DMRJ's investments and in conjunction with his IMA, Mr. Small was granted a limited "profits interest" under the Amended and Restated Operating Agreement of DMRJ Group LLC, effective as of January 1, 2011 (hereinafter "**DMRJ Operating Agreement**"), a copy of which is attached to the Amended Complaint as Exhibit A (Dkt. 18-1).  The DMRJ Operating Agreement provides at Section 6.1 that Profits Interest Members, Mr. Small, "are hereby admitted as Members of the Company, and are issued membership interests in exchange for their services, which are intended to be 'profits interests' within the meaning of IRS Revenue Procedure 93-27."

The DMRJ Operating Agreement provides that Small is to receive the lesser of its designated percentage of DMRJ's Net Profits and "Adjusted Profits Amount."  *Id.,* Section 8.2.  The "Adjusted Profits Amount" is calculated pursuant to the complex formula set forth in Section 8.2 of the DMRJ Operating Agreement (and illustrated in Schedule A thereto).  This formula takes as a starting point the "Bonus" that would be awarded pursuant to the terms of the Small IMA, less Base Salary (as defined in the Small IMA).  Thus, it is clear that the DMRJ Operating Agreement, and the

6

Small IMA, are intended to be read together as a single, coherent economic arrangement.  Trott Decl. ¶ 48.

The Small IMA and the DMRJ Operating Agreement each provide that if the Small IMA is terminated for cause pursuant to its terms, Small's right to a Bonus and net profits interest are terminated.  Dkt. 18-1 at 8; Trott Ex. 5, Section 3(e).

## IV.   Small's Bonus Arbitration

Small's employment at Platinum Management was terminated effective July 31, 2015 - before PPVA's collapse and the subsequent emergence of Small and others' wrongdoing.  Trott Decl. ¶ 53.In 2015, Small commenced an arbitration with the American Arbitration Association against Platinum Management, alleging breach of the Small IMA for non-payment of Bonuses for the preceding several years (the "**Arbitration**").*Id.* ¶ 54.

The arbitrator, based on information available at that time, determined that Mr. Small's employment had not been terminated for cause, and accordingly that he was entitled to continue receiving from Platinum Management Bonuses on Account investments until the various funds' position in those investments was fully liquidated (the "**Small Arbitration Award**").  Trott Decl., Ex. 6.  Further, the arbitrator accepted Mr. Small's proposed methodology for calculating the Bonus under the Small IMA, in conjunction with the terms of the DMRJ Operating Agreement, which is: calculate all annual profits (gains minus cost basis) on all of the investments within Small's Account, net them against all annual losses on other investments within the Account, deduct Account Expenses, and deduct Small's Base Salary for that year.*Id.*

Appearing in the arbitration on behalf of Platinum Management was Mark Nordlicht, the Chief Investment Officer of PPVA, who, like Small, has been indicted in the Criminal Action and also is named as a defendant in the SEC Action and the various other pending proceedings arising

7

out of the collapse of PPVA and its affiliated funds.  Given that both sides of the arbitration involved persons involved in the very activity that later would result in criminal and civil charges, including grossly inflated and incorrect asset values that led to similarly incorrect profits calculations, it is understandable that, at the time, the arbitrator based his decision concerning the calculation of Mr. Small's Bonus payment on inflated, inaccurate numbers concerning the assets managed by Mr. Small.

As noted above, many of PPVA's investments and assets not only were _valueless_ but tortious and alleged criminal actions by Mr. Small and others in respect of those investment and assets actually created _liabilities_ for PPVA and its subsidiaries.  Trott Decl. ¶ 57.

Small commenced an action to recognize the arbitration award as a judgment in New York State Supreme Court on November 17, 2016, Index. No. 656047/2016.  By Order dated November 11, 2017, Justice Bransten stayed the action to confirm the Small Arbitration Award into a judgment, pending the outcome of the Criminal Action and/or the SEC Action.  Trott Decl. ¶ 60.Justice Bransten held that a finding of criminal or civil wrongdoing by Mr. Small would invalidate his right to recover pursuant to the previously-issued Small Arbitration Award.  _Id._

## V.    DMRJ Funds and Delaware Fiduciary Duties

As set forth above, DMRJ is a subsidiary of PPVA that was utilized to make various investments.  DMRJ was formed in about August 2008, to serve as the vehicle for PPVA's loans to and investments in Implant Sciences Corporation and its affiliates (collectively "**Implant Sciences**").  Between December 2008 and 2015, DMRJ made a series of term and revolving loans to Implant Sciences that were secured by security interests in and liens on all of Implant Sciences' assets.  Trott Decl. ¶ 63.

In October 2016, Implant Sciences filed for protection under chapter 11 of the United States Bankruptcy Code in the Bankruptcy Court for the District of Delaware.  In February 2017, following negotiations among representatives of the Implant estate and the Liquidators on behalf of PPVA, DMRJ and another PPVA entity, Montsant Partners LLC, there was a settlement by which a total of $46,006,422.11 was paid to DMRJ in respect of claims held by DMRJ and Montsant against Implant Sciences, of which amount a pro rata share is allocable to Montsant based on its $ 5.4 million claim against Implant Sciences (which amount is subject to further deduction in connection with a collateral agency agreement between DMRJ and Montsant). Approximately $8.9 million also was deposited into a separate escrow account in which DMRJ maintains an interest pending the outcome of litigation to which DMRJ is a party.  *See DMRJ Group LLC v. West Loop South LLC, et al.*, Index No. 653019-2017 (N.Y. Sup. Ct. N.Y. Co.).  In addition, to the West Loop/Epocs claims, other parties with claims against DMRJ and PPVA also have asserted rights to the proceeds of the Implant settlement, which claims the Liquidators are litigating or are in the process of resolving.  Trott Decl. ¶ 64.

Notably, unless specifically limited or eliminated by the LLC agreement, the Delaware Limited Liability Company Act (DLLCA) specifies that the rules of law and equity, including the laws relating to fiduciary duties and the laws merchant, govern the conduct of managers and members of an LLC.  Del. Code Ann. 6 §§ 18-1101(c), 1104.  The DMRJ Operating Agreement does not contain a provision eliminating or limiting fiduciary or other obligations.  Trott Decl. ¶ 71.

As appointed Liquidators of PPVA by the Cayman Court and as Operating Managers of DMRJ, Defendants are officers of the Court.  They are bound to act with respect to DMRJ in

compliance with Delaware law, and have pledged to do so in writing specifically in respect of Small's disputed claim.  Trott Decl. ¶ 72.

Under the provisions of the DMRJ Operating Agreement and pursuant to Delaware law, DMRJ must undertake analysis of its known and expected liabilities and establish reasonable reserves for the payment of same before it can distribute assets to its members, or otherwise make provisions for recapitalization.  *Id.* ¶ 73.  Accordingly, the Liquidators have evaluated (and re-evaluated, where appropriate), the reasonable expected value of the various claims against and interests in DMRJ, including that of Mr. Small, and maintain reasonable assets and cash reserves both at the DMRJ and PPVA level under the circumstances.  *Id.*

In February 2018, Mr. Small demanded that he both be paid his profits interest from DMRJ assets and receive access to DMRJ's books and records.  Trott Decl. ¶ 74.  Both requests were rejected, because Mr. Small's demand was not accepted, either on the merits or in quantum, and the Liquidators consider Mr. Small to be a security risk.  Under the circumstances, they were not prepared to provide him with any information concerning PPVA or its subsidiaries.  *Id.*  Instead, at the direction of the Liquidators, the undersigned counsel confirmed that the Liquidators, in their capacities as Operating Managers of DMRJ, would act in accordance with their obligations under Delaware law as fiduciaries and officers of the court (the "**Small Claim Email**").  Trott Decl. ¶ 75, Ex. 7.  All of the "evidence" upon which Mr. Small relies in support of his claims that he will suffer "irreparable injury" is dated long before the unequivocal pledge in the Small Claim Email. Tellingly, Mr. Small chose not to include the Small Claim Email in his submissions.

## VI.    The Complaint and Requested Injunctive Relief

On June 5, 2018 Plaintiff, despite having been indicted in connection with the Platinum Collapse, knowing that DMRJ was being managed by court-appointed fiduciaries, knowing that

there were various other claims against the assets of DMRJ and that the ultimate profits of DMRJ would not be known for a substantial length of time, and that his claim was disputed by DMRJ, filed a Complaint in this action against the Liquidators, asserting that Small is entitled to a profits interest from DMRJ earned during the period of 2012-2017 pursuant to the DMRJ Operating Agreement, and that the Liquidators of PPVA and Operating Managers of DMRJ, have failed to make payment on this obligation in breach of the Operating Agreement.[4]  Dkt. 18 at 13-14. Plaintiff's complaint asserts that the Liquidators, under the supervision of the Courts, are improperly using the DMRJ funds, and accuse the PPVA Liquidators of perpetrating a "scheme" to deprive Plaintiff of his (disputed, and contingent) "interest" in the DMRJ funds.  Dkt. 18 at ¶¶ 12-13.

Despite the Liquidators' consistent reassurances that the Operating Managers of DMRJ (through their role as Liquidators of PPVA, the sole member of DMRJ) are maintaining reasonable reserves and complying with their fiduciary duties under the circumstances, Plaintiff has requested this Court to issue an injunction requiring the Liquidators to maintain $6 million in cash reserve solely for his account during the pendency of this litigation.  Dkt. 13.  This bad faith request for injunctive relief is and was an unnecessary exercise and a waste of the Court's and DMRJ's resources.  Furthermore, the injunction request fails to take into account the many defenses DMRJ has to Plaintiff's claim to his profits interest, both on the merits and as to quantum, counterclaims against Small by DMRJ (and PPVA) all of which will substantially reduce, if not completely eliminate the amount of recovery to which Plaintiff is entitled under the relevant agreements.

---

[4] Plaintiff filed an Amended Complaint on June 20, 2018.  Dkt 18.

## ARGUMENT

**VII.    Plaintiff is Not Entitled to a Preliminary Injunction**

A preliminary injunction is an "extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."*Silberberg v. Board of Elections of the State of New York*, 216 F. Supp. 3d 411, 416 (S.D.N.Y. 2016) (Castel, J.) (citing *Grand River Enter. Six. Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007).

Courts in the Second Circuit consistently deny motions for injunctive relief unless the moving party can establish credible evidence of "irreparable harm absent injunctive relief, and either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in plaintiff's favor."*Almontaser v. New York City Department of Education*, 519 F.3d 505, 508 (2d Cir. 2008) (internal quotation marks and citation omitted).*See also Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 38 (2d Cir. 2010) (stating standard for preliminary injunction).  Plaintiff does not dispute this standard, nor can he satisfy any of these requirements.

### A.  There is no Risk of Irreparable Harm Here

Plaintiff admits that a showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction.  Dkt. 13 at 12 (citing *Reuters Ltd. v. United Press Int'l., Inc.*, 903 F.2d 904, 907 (2nd Cir. 1990).  The evidence he offers in support of this assertion -- that there is an "imminent" risk of "empty coffers" at DMRJ against which to recover – is simply is not true, while a mere demand for monetary damages does not suffice to justify a preliminary injunction under the law when there are assets available to pay any potential claim.

### i. DMRJ is being Managed by Court Appointed Fiduciaries and Funds are not Being Dissipated

Under the terms of the Amended DMRJ Operating Agreement, control of DMRJ is vested in its Operating Managers, and only full members – as opposed to profits members such as Mr. Small – are authorized to serve as an Operating Manager.  By contrast, Profits Interest members are not eligible to serve as Operating Managers, nor are they entitled to vote on any matter related to the management of DMRJ except to the extent that such vote affects their direct interest.  The DMRJ Operating Agreement provides that "Management of [DMRJ] shall be vested in all of the Members who shall also serve as Operating Managers . . . [DMRJ] shall be managed by the Operating Managers and the conduct of [DMRJ's] business shall be controlled and conducted solely and exclusively by the Operating Managers in accordance with this Agreement." *See* DMRJ Operating Agreement § 5.4.

The Trott Declaration also establishes that since their appointment, the Liquidators, who are court appointed fiduciaries and duly recognized foreign representatives, have served as the Operating Managers of DMRJ.  Trott Decl. ¶ 66.  The DMRJ Operating Agreement vests all authority to determine the timing and amount of distributions to members in the Operating Manager.DMRJ Operating Agreement at §§ 7.1, 7.2 (Dkt. 18-1 at 9-10).  The DMRJ Operating Agreement further provides that, all cash except amounts required for the operation and reasonable working capital requirements of DMRJ would be distributed to PPVA, except that the Profits Members were to receive distributions of their profits interests, if any, as a priority.  *Id.* at § 7.2.

These provisions, however, are subject to the limitation set forth in Del. Code tit. 6 § 18-607(a).  This section prohibits a limited liability company from distributing assets to members without first determining that it will have sufficient unencumbered assets to pay its liabilities exclusive of liabilities to members arising out of their interests in the company.  Trott Decl. ¶ 68.

DMRJ is not in dissolution, but even if it were, the same rules apply when a limited liability company is distributing assets in connection with a dissolution.  Trott Decl. ¶ 69.  As a condition of dissolution and distribution to members, a Delaware LLC must first pay all known claims and set aside reasonable assets for contingent claims under the circumstances.  *Id.*To that end, section 18-804(a) of the Delaware Limited Liability Company Act ("**DLLCA**") provides that "upon the winding up of a limited liability company, the assets shall be distributed [first] to creditors," and that a limited liability company (LLC) that has dissolved "shall make such provision as will be reasonably likely to be sufficient[5]  to provide compensation for claims that have not been made known to the limited liability company or that have not arisen but that, based on facts known to the limited liability company, are likely to arise or to become known to the limited liability company within ten years after the date of dissolution."  *See* Del. Code Ann. 6 § 18-804(b)(3). This includes contingent, conditional and unmatured claims and obligations known to the LLC, and obligations known to the LLC but for which the claimant's identity is unknown.  *Id*. § 18-804(b)(1).

As court appointed fiduciaries of PPVA, the Liquidators are required to manage the assets and affairs of PPVA and its subsidiaries for the benefit of all creditors and stakeholders.  Likewise, as Operating Managers of DMRJ, the Liquidators must comply with their obligations as fiduciaries under Delaware law.  Those obligations include, among other things, making appropriate distributions to members in accordance with the requirements of the Amended Operating Agreement, and ensuring that DMRJ has sufficient reserves to pay its liabilities other than liabilities to members arising out of their interests in the company.  Del. Code. Ann. 6 § 18-607(a).

---

[5]Notably, it is not required that the reservation of funds need be maintained in ***cash***, as opposed to invested or reserved in some other form, including but not limited to insurance, assets, or commitments to recapitalize as necessary.  Thus, Plaintiff's request to maintain a $6 million cash reserve goes beyond the requirements of Delaware law.

14

The Liquidators' fiduciary obligations do not, however, require them to make distributions to members to the extent that there is a good faith basis to contest the propriety of such distributions, as in the case of Mr. Small's claims.

Indeed, given that (i) Mr. Small is expected to be the target of litigation by PPVA and DMRJ and (ii) the known facts indicate that Mr. Small likely is not entitled to any distributions on account of his purported "profits interest" in DMRJ,  it would be a breach of the Liquidators' duty of care to distribute funds to Mr. Small or to provide him with access to information concerning DMRJ or the PPVA estate.  *U.S. ex. rel. Willoughby v. Howard*, 302 U.S. 309 (1938) ("every trustee or receiver of an estate has the duty of exercising reasonable care in the custody of the fiduciary estate").

Under the circumstances, the Liquidators have taken steps to protect DMRJ's  interests while also addressing Mr. Small's demands – by complying with Delaware law and providing Mr. Small with written assurances concerning the maintenance of same.  *See* Trott Declaration at ¶ 75 and Exhibit 7.

As such, Plaintiff's entire irreparable harm argument amounts to nothing more than a complaint about a lack of specific reference to his profits interest claim in outdated PPVA filings (Dkt. 13 at 13), none of which have anything to do with claims against DMRJ, and which filings are only made annually.[6]  The absence of a reference to his demand in such PPVA filings does not, however, mean that the Liquidators have failed to establish reasonable reserves at DMRJ, as the Liquidators specifically represented that they would.  In fact, the Liquidators and their counsel repeatedly have assured Mr. Small and his counsel that they are fully complying with Delaware law and that reasonable reserve has been made.  *Id.*

---

[6]As compared to more regular and frequent reports to and meetings of the PPVA Liquidation Committee.

The Liquidators are court appointed and supervised fiduciaries and duly recognized foreign representatives who must comply with Delaware law in their capacities as Operating Managers of DMRJ, and have been recognized as Chapter 15 Foreign representatives by the United States Bankruptcy Court for the Southern District of New York.  Trott Decl., Ex. 2.  They have and will continue to take all appropriate actions, as required under Delaware law, and are prepared to provide a complete accounting of DMRJ's finances to the Court *in camera*.  Trott Decl. at ¶ 65.  Under the circumstances, Plaintiff has not, and cannot, establish irreparable harm.

### ii.  Plaintiff Cannot Establish Irreparable Harm Because He Alleges Only Money Damages

Plaintiff's causes of action and prayer for relief seek payment of the profits interest to which Plaintiff alleges he is entitled.[7]  Specifically, Plaintiff alleges damages in the approximate amount of $2.5 million, with the exact amount to be determined at trial.  Dkt. 18 at § 53.  Accordingly, Plaintiff cannot establish irreparable harm because he only seeks to recover money damages.  "As a general matter, because monetary injury can be estimated and compensated, the likelihood of such injury usually does not constitute irreparable harm."  *Brenntag Int'l Chem. Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999) (citing *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979)).  This is in strict contrast to non-monetary, on-going harms which the equitable nature of the preliminary injunction is designed to prevent, such as in the cases cited by Plaintiff, *Mullins v. City of New York*, 634 F. Supp. 2d 373, 386 (S.D.N.Y. 2009) (involving First Amendment concerns in connection with potential retaliation under the Fair Labor Standards Act).

---

[7]While Plaintiff also seeks an examination of the books and records, or alternatively an accounting, this is not the relief which the request for preliminary injunction is aimed at protecting.  Ironically, Plaintiff cites *In re Bernard L. Madoff Inv. Secs. LLC*, 458 B.R. 87, 130 (Bankr. S.D.N.Y. 2011), in support of his request.  While in that case an accounting was requested based on the breaches of fiduciary duties of the senior managers of the Madoff investment company, it is Mr. Small himself who has breached those same duties here.

Certain exceptions exist to this restriction, namely where a defendant is insolvent (*Brenntag*, 175 F.3d 245), and where the non-movant threatens to remove its assets from the court's jurisdiction in order to frustrate a creditor. *E.g., Dong v. Miller*, No. 16-5836, 2018 WL 1445573, at *11 (E.D.N.Y. March 23, 2018). Neither of those exceptions apply here. Plaintiff concedes, as he must, that DMRJ is solvent.[8] "When it appears that damages will adequately compensate a complainant, and that the defendant is solvent and able to respond in damages, a motion for a preliminary injunction will be denied." *Overweight Counterbalance Elevator Co. v. Cahill & Hall Elevator Co.*, 86 F. 338 (C.D. Cal. 1898). As to the second exception, the Liquidators' very purpose is to resolve creditor claims through litigation and/or settlement, and they have assured Mr. Small that the proper reserve is being maintained for Small's claim. Trott Decl., Ex. 7.

Despite the outdated creditor reports and minutes submitted by Plaintiff (Cohen Decl., Dkt. 13 at Ex. C & L; *see also* Dkt. 13 at 13 ("they will start to use DMRJ funds 'as quickly as possible'")), which are dated December 2017 and March 2018, respectively,[9] DMRJ has taken more than sufficient action to comply with Delaware law and is solvent, which determinations are under constant evaluation. Trott Decl. at ¶¶ 14, 73. As such, there is no "imminent" concern of "empty coffers" at DMRJ and no basis upon which this Court may find irreparable harm. *Gulf Coast Produce, Inc. v. American Growers, Inc.*, No. 07-80633, 2007 WL 2302109 (S.D. Fla. Aug. 8, 2007) (court held evidence was that defendant was solvent and trust assets were not being improperly dissipated, and movant had no evidence to the contrary)

---

[8]Indeed, if DMRJ is insolvent, Plaintiff is not entitled to any distribution under his profits interest.

[9]A claim of irreparable harm is undercut by a party's unreasonable delay in seeking injunctive relief. *In re First Republic Group Realty, LLC.*, 421 B.R. 659, 679 (Bankr. S.D.N.Y. 2009) ("A party's delay in seeking relief, in the face of potential harm caused by such a delay, vitiates a party's claim that such harm is irreparable.") (citing cases).

**B.  Small is Not Likely to Succeed on the Merits of His Breach of Contract Action**

Plaintiff also cannot demonstrate that he has a substantial likelihood on the merits of his demand that he is entitled to any profits distribution from DMRJ.  When the requested injunction would alter, rather than maintain, the status quo, the moving party must show a "substantial" likelihood of success on the merits.  *N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 486 (2d Cir. 2013) (citation omitted).  Here, Plaintiff seeks to alter the status quo, requiring the Liquidators to effect a cash freeze and prioritize his demand for a distribution of up to $6 million of cash on account of an alleged equity interest, as opposed to managing DMRJ's assets in accordance with their duties as Operating Managers for the benefit of all of parties with an interest in DMRJ, including its members and any valid creditors.

Even under the lower standard of "serious questions" going to the merits of the claim, Plaintiff has failed to meet his burden under the clear facts of this case.  Because there are numerous meritorious defenses to Plaintiff's claims which demonstrate that Plaintiff is highly unlikely to recover here, the preliminary relief attempting to restrain $6 million cash should be denied.

**i.  Small is Not Entitled to Recover under the DMRJ Operating Agreement Where He Has Breached His Duties Under the Investment Management Agreement and Caused the Financial Collapse of PPVA and its Subsidiaries**

In the Small IMA, Mr. Small covenants to perform his services with respect to Account investments "using a commercially reasonable professional standard of care," to act "solely in the interest of the Account," and to act "in accordance with the provisions of . . . all applicable federal, state and foreign laws and regulations."  Small IMA Section 4(a)(i).  Breach of these covenants is one of the enumerated grounds pursuant to which the Small IMA may be terminated for "Cause."  Small IMA Section 1(d).  Each of these covenants were violated by Small, and DMRJ and PPVA intend to bring counterclaims against Small for breach of his IMA.  Trott Decl. ¶ 40.

18

Small's employment with Platinum Management was terminated on July 31, 2015. Termination for Cause extinguishes Small's right to receive a Bonus going forward, for the calendar year during which the termination for Cause occurs, and for the preceding calendar year if the termination for Cause occurs prior to February 15 of the following year.  Small IMA Section 3(e).  If termination is not for Cause, Small's right to receive an annual bonus continues "until all securities positions in the Account as of the Termination Date are liquidated . . ." Small IMA Section 3(f).  Similarly, Section 6.1 of the DMRJ Operating Agreement provides that if the IMA agreement of Small is terminated for cause pursuant to the terms of the IMA, the DMRJ Operating Agreement net profits interest of the terminated individual likewise terminates. Dkt. 18-1 at 8.

Since the issuance of the Small Arbitration Award, in which the arbitrator determined that Small was terminated without cause, the indictments against Small and the other Platinum Management executives that have been accused of criminal conduct that caused or contributed to the financial collapse of the various Platinum entities have been unsealed.[10]  The Liquidators' investigation likewise indicates that Mr. Small, among others, caused or materially contributed to the financial collapse of PPVA by engaging in transactions that had a materially adverse effect on PPVA and its assets, and such acts resulted in a significant loss of value to the detriment of innocent creditors and investors.  Certainly, the supervening criminal and civil allegations against Small, and the myriad allegations of overvaluation and mismanagement that could be asserted by PPVA, if proven, indicate that Small breached his fiduciary obligations under the Small IMA, was subject to termination for Cause and not entitled to any Bonus compensation or profits interests.

---

[10]Justice Branston stayed Plaintiff's attempt to enforce the Small Arbitration Award because she found that Mr. Small would not be entitled to any Bonus (or profits interests) if the allegations against him are proven.  This Court should not permit Mr. Small to do an end run around Justice Branston's ruling by obtaining injunctive relief that would place his purported profits interest ahead of the interests of DMRJ's valid creditors and equity holders.

19

In his brief, Plaintiff attempts to minimize the significance of the Criminal and SEC Actions and his own role in the collapse of PPVA by citing to an unrelated filing filed by the Liquidators in the Implant Sciences case (Dkt. 13 at 17, citing Cohen Decl., Ex. B), in which they stated that those actions did not implicated DMRJ.  While the allegations in the criminal indictment and the SEC complaint do not relate to the conduct of DMRJ's investment in Implant Sciences – the purpose of the statement in the Liquidators' prior filing – the allegations in those complaints clearly relate to Mr. Small, his conduct as a manager, and whether there are losses at investments he managed that offset any demand he makes here.  As such, his attempted deflection is entirely disingenuous.

If Mr. Small is convicted of the allegations in the Criminal and SEC Actions, it will prove that he breached the Small IMA and his fiduciary duties, making him ineligible to receive profits interest payments in relation to DMRJ and giving rise to claims by DMRJ and PPVA against him. Trott Decl. ¶ 61.Regardless of the outcome of those Actions, it is clear that based on the true value (*i.e*., lack of profit) of the Platinum entities under Mr. Small's management during his employment, any net DMRJ profit will be offset by the massive losses caused by Mr. Small's actions.  *Id.* ¶ 62.

### ii.   Losses at Black Elk and Other Investments Managed by Plaintiff Offset any Profits Interest to Which He Might Otherwise be Entitled

Even assuming, *arguendo*, that Plaintiff is not found to have forfeited his bonus and profits interests because he was subject to being terminated for cause, he still is not entitled to any DMRJ related "profits interest."

For example, Small's Complaint ignores the concept of "net profit" on which calculations in both the DMRJ Operating Agreement and the Small IMA are premised.  Section 8.2 of the DMRJ Operating Agreement provides in relevant part that "the Net Profits of the Company" are to be allocated 90% to PPVA, with up to 10% of DMRJ's Net Profits allocated as follows: Small

to receive the **_lesser_** of 6.5% of DMRJ's Net Profits and Small's "Adjusted Profits Amount," [under the Small IMA] with Profits Member Levy receiving the lesser of 3.5% of DMRJ's Net Profits and Levy's "Adjusted Profits Amount." Dkt. 18-1 at 10.

Given that the DMRJ Operating Agreement speaks in terms of DMRJ's "net profit," any distribution to Small would have to be net of all liabilities, costs and expenses, not based on DMRJ's gross revenues. Indeed, Plaintiff disingenuously seeks to claim a straight percentage of the proceeds of the Implant Sciences settlement as his "profits interest" from DMRJ. Yet, as the former portfolio manager for this investment, Plaintiff undoubtedly is aware that the Implant Sciences settlement is comprised of principal and interest due with respect to loans made to that company over a period of years by DMRJ. As such, by definition only the interest component of the Implant Sciences settlement proceeds constitute "profits" from which Mr. Small's purported "profits interest" would be payable in any event, and these amount are more than offset by losses at other investments managed by Mr. Small.

Likewise, a number of disputed and contingent claims have been asserted against DMRJ, so DMRJ's ultimate profitability is not known at this time. Trott Decl. ¶ 51. In any case, DMRJ is still engaged in trading and has recently purchased debt instruments that had the effect of lowering its contingent and disputed liabilities. *Id.* In their discretion and subject to the advice of the duly constituted PPVA Liquidation Committee and the Cayman Court, DMRJ may well invest in or support other PPVA assets, make distributions to PPVA consistent with Delaware law, and in their discretion or as advised, provide additional capital to DMRJ. *Id.*

Given the interconnected nature of the IMA and Small's compensation as a profits interest member under DMRJ Operating Agreement, and the Account-wide basis on which Small's compensation must be calculated under the two agreements, Small cannot seek to benefit from the

net profit of Platinum's successful investment, DMRJ, while ignoring the massive losses to the other Platinum entities as a whole. Trott Decl. ¶¶ 10, 20, 39, 62. It is clear that the "profits interest" sections of the Amended DMRJ Operating Agreement and the Small IMA are intended to operate as a cohesive whole, with the DMRJ "profit member" interest awarded to Small as deferred compensation for his work as a portfolio manager of DMRJ and its investment in Implant Sciences pursuant to the IMA. The profit-based "Bonus" paid pursuant to the Small IMA deducted profit interests paid pursuant to the DMRJ Operating Agreement (and/or other similar operating agreements granting net profit interests), and vice versa. Id.

As noted in the Trott Declaration, PPVA's investment in Black Elk not only has suffered a total loss, but also has resulted in eight-figure claims for damages against PPVA, a portion of which have already been agreed pursuant to a partial settlement agreement currently pending approval in the Cayman Court. Under the loss carryforward provisions of the Small IMA, these losses totally offset any so called "profits" resulting from the settlement in Implant Sciences. Trott Decl. ¶ 39. Also as noted, most of PPVA's assets are worthless, including many of the investments that are believed to have been under Small's management. Trott Decl. ¶ 29. Mr. Small thus is not entitled to any profits from the operation or investments of DMRJ because his Adjusted Profits under the Small IMA are and were negative. Trott Decl. ¶ 49.

## C. The Balance of Hardships and Equities Weighs in Defendants' Favor Where Injunction Will Disrupt the Fund and Plaintiff Should not Benefit from His Criminal Conduct

As is evident from the foregoing discussion, Plaintiff cannot demonstrate a substantial likelihood of success on the merits of his breach of contract claim. He also cannot demonstrate "serious questions" as to the merits, and that the balance of hardships tips "decidedly in the favor of the moving party." *E.g.*, *Doninger v. Niehoff*, 527 F.3d 41, 47 (2d Cir. 2008).

It is clear from the history of Mr. Small's involvement with PPVA and its subsidiaries, including Black Elk, that the equities do not weigh in favor of granting preliminary relief.  Given his role in the collapse of PPVA, through the overvaluation of assets followed by the stripping of value of those assets to insiders, as described in the criminal indictment and the SEC complaint (Trott Decls. Ex. 3, 4) Plaintiff breached his obligations under the Small IMA.  It is the height of hypocrisy that Mr. Small now accuses the Court-appointed Liquidators of failing to account for his contingent, disputed, and unlikely demand and flouting their obligations under Delaware law. Mr. Small utterly fails to demonstrate any basis for such assertions.

Reduced to its essence, Plaintiff's motion asks the Court to prefer and elevate his disputed, contingent, equity "profits" demand -- as to which appropriate reserves already have been taken – over the interests of court appointed fiduciaries working on behalf of creditors and other stakeholders who are victims of the scheme in which Mr. Small was involved and for which acts he has been indicted.  The Defendants, as Liquidators, act in the public interest in their official capacity, and that public interest requires the Liquidators to manage PPVA and its subsidiaries' assets for the maximum benefit of all PPVA and subsidiary creditors and stakeholders.  Mr. Small's requested injunction – requesting a cash freeze in an amount that is a *multiple* of his demand runs directly contrary to this directive.

With respect to balancing of hardships or equities, courts have consistently held that "[a]lthough private equities may be considered, public equities receive far greater weight." *F.T.C. v. Warner Communications Inc.*, 742 F.2d 1156, 1165 (9th Cir. 1984) (citing cases).  Under all of these circumstances, the balance of the equities weighs overwhelmingly against granting injunctive relief here and further warrants an award of attorneys' fees in favor of the Liquidators.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully state that the Court should deny Plaintiff's request for a preliminary injunction in the form of an asset freezing order over $6 million of assets during the pendency of this case.  Defendants further submit that this Court should award attorneys' fees to Defendants for their costs in defending against the requested preliminary relief. Indeed, and as previously noted, while Mr. Small has every right to make a claim, and the Liquidators have the right (and obligation) to dispute it and assert counterclaims at the DMRJ and PPVA levels, Small's application for an injunction against court-appointed fiduciaries was made in bad faith because it has no basis in fact or law.

Dated:  New York, New York
       June 29, 2018

                           HOLLAND & KNIGHT LLP

                           By: /s/ Warren E. Gluck
                           Warren E. Gluck
                           Robert J. Burns
                           Marie E. Larsen
                           31 West 52nd Street
                           New York, New York  10019
                           Phone: (212) 513-3200
                           Fax:  (212) 385-9010
                           Email: warren.gluck@hklaw.com
                                     robert.burns@hklaw.com
                                     marie.larsen@hklaw.com

                           *Attorneys for Christopher Kennedy, in his capacity as the Operating Manager of DRMJ Group LLC, and Martin Trott, in his capacity as the Operating Manager of DRMJ Group LLC*

24