IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL SMALL,<br><br>     Plaintiff,<br><br>     -against-<br><br>CHRIS KENNEDY, in his capacity as the Operating Manager of DMRJ Group LLC, and MARTIN TROTT, in his capacity as the Operating Manager of DMRJ Group LLC,<br><br>     Defendants. | 18 Civ. 5000 (PKC/OTW) |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION**

TAYLOR & COHEN LLP
Robert Cohen
Zachary S. Taylor
40 Worth Street
10th Floor
New York, New York 10013
Telephone: (212) 257-1900
Facsimile: (646) 808-0966

New York, New York
July 6, 2018

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. i

DEFENDANTS' MISTATEMENTS, FALSEHOODS, AND MISCHARACTIZATIONS ........... 1

    I.     Defendants' Falsehoods Concerning Justice Bransten's Stay Order. ..................... 1

    II.    Defendants Continue to Falsely State that Small Did Not Inform
        the Court of the Indictment and SEC Complaint. ................................................... 2

    III.   Defendants' False Representations Concerning Civil Suits
        Against Mr. Small. ................................................................................................. 2

    IV.   Defendants' Misleading Statements Concerning the
        Operating Agreement. ............................................................................................ 3

    V.    Defendants' Misleading Statements Concerning the Indictment,
        the SEC Complaint, and the IMA. ........................................................................ 3

ARGUMENT ...................................................................................................................... 4

    I.     Small Has Established Irreparable Harm. ............................................................... 4

        A.     Defendants' Actions Establish the Likelihood of Irreparable Harm. ......... 5

        B.     Mr. Small's Claim for Money Damages Does Not Preclude Him
             From Establishing Irreparable Harm. ......................................................... 8

    II.    Mr. Small is Likely to Succeed on the Merits of his Claims. ................................ 8

    III.   The Balance of Hardships Tips Decidedly in Favor of Mr. Small. ....................... 9

CONCLUSION ................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Estate of Eller v. Bartron*,
   31 A.3d 895 (Del. Sup. Ct. 2011) ............................................................................. 5

*Fitzpatrick v. American International Group, Inc.*,
   No. 10 Civ. 142, 2013 WL 709048 (S.D.N.Y. Feb. 26, 2013) ................................. 9

*In re Feit & Drexler, Inc.*,
   760 F.2d 406 (2nd Cir. 1985)...................................................................................... 8

*In re Shawe & Elting LLC*,
   2015 WL 4874733 (Del. Ch. Ct. Aug. 13, 2015)...................................................... 6

*Meinhard v. Salmon*,
   249 N.Y. 458 (1928) .................................................................................................. 5

**Statutes**

6 Del. C. § 18–607(a).................................................................................................... 7

6 Del. C. § 18–804(a).................................................................................................... 6

There is no dispute that DMRJ's investment in Implant Sciences was hugely successful. Defendants are now seeking to use DMRJ's profits to fulfill obligations of PPVA without regard to the clear and unambiguous provisions in DMRJ's Operating Agreement, which require that distributions be made to Mr. Small. In furtherance of their scheme, Defendants have wrongly refused Mr. Small access to DMRJ's books and records, misled various court's about DMRJ's ownership, and presented patently false statements and an array of other misrepresentations to this Court. Defendants' conduct shows the need for a preliminary injunctive relief.

As explained below, when stripped away of its hyperbole, Defendants' brief proffers two arguments against issuing a preliminary injunction: (1) Trust us, for we are fiduciaries with fiduciary obligations; and (2) Mr. Small is not entitled to any distributions under the Operating Agreement. The first argument is circular in its reasoning and belief by Defendants' actions. The second argument is premised on speculation, conjecture and mischaracterizations of the Operating Agreement, Mr. Small's Investment Management Agreement ("IMA"), and the indictment and SEC complaint.

## DEFENDANTS' MISTATEMENTS, FALSEHOODS, AND MISCHARACTIZATIONS

Defendant's opposition papers are rife with misstatements, falsehoods, and mischaracterizations. Their submissions further demonstrate why Defendants cannot be trusted to fulfill their obligations to Mr. Small and why a preliminary injunction should be granted.

### I.      Defendants' Falsehoods Concerning Justice Bransten's Stay Order.

Defendants statements concerning the order, issued by Justice Bransten of the New York State Supreme Court, staying Mr. Small's action to confirm his arbitration award are egregious falsehoods. Defendant's state that Justice Bransten "held that a finding of criminal or civil wrongdoing by Mr. Small would invalidate his right to recover pursuant to the previously-issued arbitration award." (Trott Decl., ¶ 60. *See also* Opp. Br. at pp. 8, 19, n. 10.).

Justice Bransten did not make any such statement. Her order and the eight-page transcript that is referenced therein reveals that Justice Bransten did not utter any words that could conceivably be construed as supporting Mr. Trott's sworn statement. (Supplemental Declaration of Robert Cohen ("Cohen Sup. Decl."), Ex. M).

## II.    Defendants Continue to Falsely State that Small Did Not Inform the Court of the Indictment and SEC Complaint.

Mr. Small's moving papers specifically discuss the Eastern District of New York indictment in which he is named as well as the civil complaint filed by the Securities and Exchange Commission in which he is a defendant. (Mov. Br. at p. 14). Mr. Small's moving papers even contain a declaration from an attorney at Holland & Knight discussing the indictment and the complaint and stating the irrelevance of both documents to DMRJ. (Cohen Decl., Ex. B at ¶ 13). Notwithstanding this, Defendants told the Court, in a June 25, 2018 letter (Dkt. # 25), that Mr. Small "fails to mention in his first Amended Complaint and Motion for Preliminary relief that he is the subject of criminal and SEC proceedings." (Cohen Supp. Decl., Ex. N at p. 2). Apparently thinking that if one repeats a lie often enough it will be believed, Defendants make this same false statement in their opposition papers, stating that Mr. Small has "declined to inform the court about … the fact that he was indicted." (Opp. Br. at p. 2).

## III.    Defendants' False Representations Concerning Civil Suits Against Mr. Small.

Defendants further attempt to mislead the Court by stating that Mr. Small is a defendant in "various civil proceedings brought by various victims." (Trott Decl., ¶ 7). As an initial matter, these "various proceedings" amount to a total of two cases. More importantly, Defendants again make egregious misrepresentations of known facts. The *Mathews* case was, with respect to Mr. Small, dismissed with prejudice on October 24, 2016. (Cohen Sup. Decl., Ex. O). The *Freedom Specialty* matter was not filed by any alleged victim of the schemes alleged in either the

2

indictment or the SEC complaint. Rather, it is a declaratory judgment proceeding regarding coverage, which was brought by three insurance carriers who issued D&O policies covering Mr. Small and others. (Cohen Sup. Decl., Ex. P).

**IV.   Defendants' Misleading Statements Concerning the Operating Agreement.**

Defendants further endeavor to mislead the Court when discussing the provisions of the Operating Agreement relating to Mr. Small's distributions. Specifically, Defendants state that a "number of disputed and contingent claims have been asserted against DMRJ and ***DMRJ's ultimate profitability*** is not known at this time." (Trott Decl., ¶ 51 (emphasis added)). The concept of "ultimate profitability," however, is entirely absent from the Operating Agreement's distribution provisions. To the contrary, Mr. Small's distribution of DMRJ's net profits are determined based on a ***yearly*** basis, with payments for claims deducted in the taxable year in which they are paid or legally obligated to be paid. (Cohen Decl., Ex. D at §§ 8.1 & 8.2). Consequently, DMRJ's "ultimate profitability" is irrelevant to calculating Small's profit interest in DMRJ for calendar years 2017 and prior.

**V.   Defendants' Misleading Statements Concerning the Indictment, the SEC Complaint, and the IMA.**

One of Defendants' central arguments is that Mr. Small is responsible, at least in part, for PPVA's collapse. Below are two examples of such statements from Defendants' papers.

- The mismanagement and alleged acts of Mr. Small, among others, caused or materially contributed to the collapse of PPVA. (Trott Decl., ¶ 34).

- [I]t is clear that based on the true value (i.e., lack of profit) of the Platinum entities under Mr. Small's management during his employment, any net DMRJ profit will be offset by the massive losses caused by Mr. Small's actions, and significant and substantial counterclaims against Small and others are being investigated (*Id.*, ¶ 64).

The problem for Defendants, yet again, is the facts. Defendants rely ***solely*** on the unproven allegations set forth in the indictment and SEC complaint. But neither of these

3

documents (even assuming the allegations are true[1]) support Defendants' assertions. The indictment alleges two investments were improperly valued: Golden Gate Oil LLC ("Golden Gate") and Black Elk Energy Offshore Operations LLC ("Black Elk"). (Trott Decl., Ex. 3 at ¶ 48). The SEC complaint only alleges Golden Gate was improperly valued. (*Id.*, Ex. 4 at ¶ 50). Neither document alleges that Golden Gate was managed by Small or that Small played a role in the valuation of Black Elk.[2] Defendants have not offered — because they cannot offer — any evidence to show that the Golden Gate investment was included in his bonus calculation under Mr. Small's Investment Management Agreement ("IMA"). Profits from Black Elk were considered in Small's bonus calculation, but only *to the extent such profits were realized*. (Cohen Supp. Decl., Ex. Q at § 1(j) and Schedule A). The reported value of Black Elk, therefore, was not included in the calculation of Small's bonus pursuant to his IMA and accordingly has no impact on his distributions related to DRMJ's Net Profits pursuant to the Operating Agreement.

## ARGUMENT

### I.    Small Has Established Irreparable Harm.

Defendants put forth two arguments as to why Small has not shown probable irreparable harm. First, Defendants essentially argue that because they are fiduciaries, they have acted in accordance with their fiduciary duties. (Opp Br. at 13-16). Second, Defendants argue that Small cannot establish irreparable harm because he has alleged only money damages. (Opp Br. at 16-17). As explained below, both arguments fail.

---

[1] Mr. Small, who is represented by Levine Lee LLP in the criminal and SEC proceedings, is vigorously contesting the allegations in the indictment and will vigorously contest the allegations in the SEC complaint when the stay of that proceeding is lifted.

[2] The U.S. Attorney for the Eastern District of New York stated that Mr. Small "is not charged in the Investment Scheme" alleged in the indictment. (Cohen Supp. Decl., Ex. R at p.1 n. 1).

4

## A.    Defendants' Actions Establish the Likelihood of Irreparable Harm.

Defendants argue that Mr. Small cannot possibly establish irreparable injury because they "are court appointed and supervised fiduciaries and duly recognized foreign representatives who must comply with Delaware law in their capacities as Operating Manages of DMRJ." (Opp. Br. at 16). This, of course, is nothing more than a terribly flawed bit of logic — circular reasoning run amok. In Defendants' world, fiduciaries, merely because they are fiduciaries, are seemingly entitled to a presumption that their actions comport with their fiduciary duties. Defendants have turned the law on its head and ignored the fundamental rule that fiduciaries are held to exacting standards: "Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior." *Estate of Eller v. Bartron*, 31 A.3d 895, 898 (Del. Sup. Ct. 2011) (quoting *Meinhard v. Salmon*, 249 N.Y. 458, 464 (1928)).

Moreover, Defendants' attempt to wrap themselves in the imprimatur of a Cayman Islands court appointment and federal court recognition as a Chapter 15 Foreign representative should be seen for what it is — a transparent attempt to shield their actions from scrutiny. DMRJ is not the subject of any of these court orders or proceedings. Additionally, the gravamen of Mr. Small's contentions is that Defendants, in pursuing their obligations to **PPVA** as Joint Liquidators, are violating their contractual and fiduciary duties as the Operating Managers of **DMRJ**. Defendants' conflation of these sets of competing responsibilities should be rejected.

Most importantly, Defendants have demonstrated that they have no intention of honoring their obligations under the Operating Agreement. In addition to refusing to make distributions to Mr. Small, Defendants have steadfastly refused to provide Mr. Small with access to DMRJ's books and records. (Mov. Br. at p. 6-7). They have based this decision upon their conclusion that Mr. Small is a "security risk." (Trott Decl. ¶ 19). Of course, Defendants have not supplied any

support for this conclusion. They have not described why Mr. Small would be a security risk or how Mr. Small's access to DMRJ's books and records would somehow imperil the company. There is simply no justification for Defendants' actions, which clearly violate the Operating Agreement and Delaware law.

Defendants also have not dissolved DMRJ, in clear violation of the Operating Agreement. (Cohen Decl., Ex. D at § 10). It is indisputable that PPVA, a Member of DMRJ, has filed a "petition … seeking for [itself] liquidation," (*id.* at § 10.2), thereby triggering the Operating Agreement's dissolution provisions. Nonetheless, Defendants have failed to engage in the mandated dissolution process, choosing instead to preserve DMRJ's assets for the benefit of satisfying PPVA's obligations.[3]

In addition to these violations of the Operating Agreement, Defendants have misled courts about DMRJ's ownership. (Mov. Br. at 4-6). Defendants' deception, described above, has continued in this litigation, where they have made numerous misrepresentations and presented outright false statements to the Court. This is not the behavior of fiduciaries acting in accordance with their duties.

Thus, Defendants' contention that Mr. Small cannot establish the likelihood of irreparable harm because they have "compl[ied] with Delaware law and provid[ed] Mr. Small

---

[3] Defendants' reference to Section 18-804(a) of the Delaware Limited Liability is, at best, disingenuous. (Opp. Br. at 14; Trott Decl., ¶ 70). As Defendants must know, if an LLC's operating agreement, like DMRJ's agreement, contains dissolution provisions, then Section 18-804(a) has no force or effect. *See, e.g.*, *In re Shawe & Elting LLC*, 2015 WL 4874733, at *41 (Del. Ch. Ct. Aug. 13, 2015) ("Under 6 Del. C. § 18–804(a), ***and unless otherwise provided in a limited liability company agreement***, the assets of the company shall be distributed to the company's creditors and then to its members.") (emphasis added).

with written assurances concerning maintenance of the same" (Opp. Br. at 15) is nothing more than a self-servicing statement that, when viewed in light of Defendants' actions and misrepresentations, is worthless. In any event, Defendants have made their position clear as to Mr. Small's claims for distributions under the Operating Agreement: ***He "likely is not entitled to any distributions on account of his purported 'profits interest' in DMRJ."*** (Opp. Br. at p. 15 (emphasis added)). Additionally, Defendants have made it abundantly clear that they intend to use DMRJ funds solely for the benefit of PPVA. Defendants have stated that they intend to use DMRJ assets to satisfy PPVA obligations, (Mov. Br. at p. 10). In their opposition brief, Defendants state that they will also use DMRJ funds to "invest in or support PPVA assets." (Opp. Br. at 21).

Finally, Defendants' reliance on section 18-607(a) of the Delaware Limited Liability Company Act is misplaced. (Opp. Br. at 13-14). Certainly, Section 18-607(a) was not intended to allow an operating manager to breach distribution obligations year after year and then, when a lawsuit is ultimately filed, claim protection from liability under the LLC Act. Additionally, Defendants cannot deplete DMRJ resources to pay PPVA creditors or make investments in PPVA assets and then claim they are constrained from making a distribution to Mr. Small under section 18-607(a). But, this is precisely what Defendants are attempting to do. Moreover, Defendants have offered no evidence to support any contention that a distribution to Mr. Small would run afoul of 18-607. Presumably, information relevant to this unsubstantiated claim would be found in DMRJ's books and records. Conveniently, Defendants have refused to provide these documents to Mr. Small.

**B.    Mr. Small's Claim for Money Damages Does Not Preclude Him From Establishing Irreparable Harm.**

As Defendants acknowledge, "even where the ultimate relief sought is money damages, federal courts have found preliminary injunctions appropriate where it has been shown that the defendant intended to frustrate any judgment on the merits by transfer[ring its assets] out of the jurisdiction." *In re Feit & Drexler, Inc.*, 760 F.2d 406, 416 (2nd Cir. 1985) (internal quotations omitted; alteration in original). Thus, injunctive relief is "appropriate" in order to "prevent [the non-movant] from making uncollectible any judgment the [moving party] may eventually obtain." *Id.*

Ax explained above, Defendants — based on nothing more than conclusory allegations for which they have provided no evidence — have already decided that Mr. Small is not entitled to any distributions under the Operating Agreement. Consequently, they have no reason to reserve any of DMRJ's funds to distribute to Mr. Small. Indeed, Defendants have already stated their intention to use DMRJ funds to satisfy PPVA obligations and to invest in PPVA assets. Absent a preliminary injunction, there is no question that Defendants will take action to render uncollectible any judgment Mr. Small may obtain.

**II.    Mr. Small is Likely to Succeed on the Merits of his Claims.**

In the face of clear violations of their contractual and fiduciary obligations, Defendants resort to speculation and conjecture in arguing that Mr. Small is not likely to succeed on the merits of those claims. First, Defendants claim that Mr. Small violated covenants of his IMA and that this converts his termination in July 2015, which was without cause, into one for cause, thereby making him ineligible to receive distributions under the Operating Agreement. (Opp. Br. at pp. 19-20). As an initial matter, Defendants have not cited any authority for their proposition

8

that an employer who is not defending a wrongful discharge claim may change a termination of an employee without cause to a termination for cause.[4]

Leaving aside the legal infirmity of their position, Defendants offer no evidence to support this conclusory allegation. Rather, the Defendants cryptically cite to their own "investigation" that "indicates" that Mr. Small, somehow "materially contributed to the financial collapse of PPVA by engaging in transactions that had a materially adverse effect on PPVA and its assets." (*Id.* at p. 19). Defendants have not offered a shred of evidence concerning their supposed investigation. No documents. No reports. No memoranda. Nothing.

Defendants next argue that any of Mr. Small's profits interest under the Operating Agreement "are more than offset by losses at other investments managed by Mr. Small." (Opp. Br. at 21). This is nothing more than rank speculation. Defendants have not offered a shred of evidence concerning the supposed losses, the amount of such losses and in what calendar year such losses occurred. Moreover, Defendants misread the loss carryforward provisions of the IMA. Those provisions do not operate as a claw back. Rather, they are future looking. In other words, losses incurred in a given year cannot, under the IMA, be used to offset profits made in previous years. (Cohen Supp. Decl., Ex. Q at § 3(c)).

## III.   The Balance of Hardships Tips Decidedly in Favor of Mr. Small.

Defendants do not — because they cannot — argue that the preliminary relief Mr. Small seeks would harm DMRJ. Rather, in arguing that the balance of hardships weighs in their favor, Defendants tout their status as "Court-appointed liquidators" and claim that Mr. Small had a

---

[4] The so-called "after-acquired evidence" doctrine is limited in scope. It only permits a defendant to utilize information acquired after an employee's termination as a defense to a ***wrongful discharge claim***. *See, e.g., Fitzpatrick v. American Intern. Group, Inc*., No. 10 Civ. 142, 2013 WL 709048, at *26 (S.D.N.Y. Feb. 26, 2013).

"role in the collapse of PPVA, through the overvaluation of assets followed by the stripping of value of those assets to insiders." (Opp. Br. at 23). As explained above, Defendants have not been appointed by any court to oversee DMRJ, and their actions in willfully breaching the Operating Agreement and attempting to deceive various courts through misrepresentations and false statements amply demonstrate that they are in no position to be trusted to fulfill their obligations to Mr. Small. Additionally, Defendants have not offered one piece of evidence in support of their claims concerning Mr. Small and PPVA. Rather their assertions about Mr. Small are solely based on their mischaracterization of the unproven allegations in the indictment and SEC Complaint.

## **CONCLUSION**

For the reasons set forth herein and in Mr. Small's moving papers, Plaintiff Daniel Small's motion for preliminary injunctive relief should be granted.


Dated:   New York, New York
         July 6, 2018

TAYLOR & COHEN LLP

By:  /s/ Robert Cohen
     Robert Cohen
     Zachary S. Taylor
     40 Worth Street, 10th floor
     New York, NY 10013
     Tel. (212) 257-1900
     Fax (646) 808-0966
     rcohen@taylorcohenllp.com
     ztaylor@taylorcohenllp.com

     *Attorneys for Plaintiff Daniel Small*